WOODWARD, Administratrix, Respondent, vs. THE CITY OF BOSCOBEL, Appellant.

*January 12 — January 31, 1893.*

*Municipal corporations: Injury from defective sidewalk: Duty of lot-owner to make repairs: Invalid ordinance: Notice of defect: Measure of damages.*

1. The charter of Boscobel (Laws of 1873, ch. 148) imposes upon the city the obligation to build sidewalks and keep them in repair, and requires the lot-owners to pay the cost thereof, but charges them with no other duty in the matter and gives them no control over the work.  *Held,* that an ordinance charging lot-owners with the duty of keeping the sidewalks in repair is unauthorized and invalid.

2. No mere acquiescence in such an ordinance, no matter how long continued, can operate to confer authority upon the common council to impose such burden on the lot-owners.

3. A sidewalk in said city being out of repair, the occupant of the lot was required by the street commissioner to repair it, and did so, but left it in a defective condition, the defect, however, not being apparent.  In an action for personal injuries caused by such defect, it is *held* that as the city had notice of the former defective condition, its obligation to repair continued until the walk was put in proper repair, and it must be conclusively presumed that the city knew of the defect left therein which caused the injury.

4. In an action for personal injuries caused by a defective sidewalk, the true rule of damages is that the plaintiff be compensated for time lost and pain and suffering endured, or which it is reasonably certain he will lose and endure in the future, caused directly by

the injuries; and it was not error, in such a case, to refuse to give an instruction to the effect that in estimating the damages the jury should exclude any disability arising from sickness or ill health caused by, or reasonably attributable to, any predisposition of plaintiff to disease or previous over-exertion on his part.

APPEAL from the Circuit Court for *Grant* County.

The plaintiff's intestate, Joseph Woodard, commenced this action against the city of Boscobel to recover damages for injuries alleged to have been received by him by reason of breaking through a defective sidewalk in said city, which the city was under legal obligation to keep in repair. The plaintiff recovered judgment for $2,000 damages and costs, rendered pursuant to a special verdict, after a motion for a new trial on behalf of the city had been denied. This appeal is by the city from such judgment. Pending the appeal, the plaintiff died, intestate. His death was duly suggested in this court, and the cause was continued in the name of *Nettie Woodward*, his widow and the duly appointed and qualified administratrix of his estate.

The plaintiff was a laboring man, and received the injury of which he complained in the early morning of November 1, 1889, when on his way from his residence to the establishment in which he was employed. He had lost his left leg, which was amputated below the knee, in 1880, as the result of a gunshot wound in his foot, which he received when quite young, and which never healed. He was walking along the sidewalk on the south side of La Belle street, in the defendant city, using a cane, which he carried in his right hand, as he was accustomed to do, when the stump of his artificial limb went through the plank sidewalk, throwing him down suddenly and with violence, and causing the injury complained of.

The sidewalk where plaintiff was injured abutted certain lots belonging to Mary R. Tate. In the spring of 1889 this sidewalk was out of repair, and the proper street com-

Woodward vs. The City of Boscobel.

missioner of the city directed the occupant of Mrs. Tate's lots, one Onstine, to repair the same, and he attempted to do so. The allegation in the answer is that the commissioner directed Mrs. Tate to repair the sidewalk, and she did so.

At the place of injury the sidewalk rested upon posts standing from fifteen inches to two feet above the surface of the ground. The planks were laid lengthwise of the walk, and rested on four by four inch stringers laid across the walk. In making the repairs directed by the street commissioner, Onstine found that a plank ten inches wide, obtained for the purposes of such repairs, was from twelve inches to twenty inches too short, and he inserted another piece of the same width to supply the shortage. When this was done, the surface of the walk seems to have been level, no apparent defect therein being visible to a person passing along the walk. One of the principal controversies of fact litigated on the trial related to the manner in which such short piece of plank was inserted in the walk by Onstine. While the testimony on behalf of the city tends to show that the piece was properly inserted in the walk, that on behalf of plaintiff tends to show that one end of such piece had no support under it, but was toe-nailed into the end of the longer plank, while the other end of the short piece was insufficiently supported, in that its only support was the top of a small post or stake driven into the ground; also that such support was plainly visible from the street, and that its inadequacy was obvious.

The answer alleges the ownership of the lots abutting the place of the accident to be in Mrs. Tate; her obligation to repair the sidewalk; and her primary liability for injuries caused by the same being out of repair; and prayed that she be made a defendant to the action. The court denied the application to make her such party, and the cause was tried and disposed of with the city as sole de-

fendant.   Certain instructions proposed on behalf of the city, and refused, are stated and considered in the opinion.

A special verdict was returned, to the effect that plaintiff was injured in the manner above stated, without negligence on his part; that the sidewalk was out of repair and insufficient; and that the city authorities had notice of such defect therein, or that such defective condition had existed so long that, in the exercise of reasonable care, they should have discovered the defect and repaired it.   The jury also assessed plaintiff's damages at $2,000.

Upon such special verdict the court gave judgment for plaintiff, from which the city has appealed.

*R. D. Blanchard,* for the appellant, contended, *inter alia,* that assessment for local improvement, which is equivalent to imposing the duty upon the lot-owners of constructing and maintaining in good repair sidewalks in front of their lots, has been sustained here from an early date; and the liability of the lot-owner for damages for failure to perform the duty of keeping the sidewalk in front of his lot in repair is in the nature of a penalty to enforce such duty, and is incident to the burden imposed by the local assessment. *Henker v. Fond du Lac,* 71 Wis. 620; *Raymond v. Sheboygan,* 70 id. 318; *McFarlane v. Milwaukee,* 51 id. 691; *Hincks v. Milwaukee,* 46 id. 559; *Amos v. Fond du Lac,* id. 695; *Papworth v. Milwaukee,* 64 id. 390; *Hiner v. Fond du Lac,* 71 id. 74; *Raymond v. Sheboygan,* 76 id. 335.

For the respondent there was a brief by *W. G. Palmer* and *E. E. Burns,* attorneys, and *W. E. Carter,* of counsel, and oral argument by *Mr. Carter.*   They argued, among other things, that the owner of the abutting lot was not legally bound to keep the walk in repair, and therefore was properly not brought in as a defendant. *Papworth v. Milwaukee,* 64 Wis. 389; *Moore v. Platteville,* 78 id. 644.   The instruction asked by defendant as to the measure of damages was properly refused. *Oliver v. La Valle,* 36 Wis.

592; *Stewart v. Ripon,* 38 id. 584; *Brown v. C., M. & St. P. R. Co.* 54 id. 342; *McNamara v. Clintonville,* 62 id. 207.

LYON, C. J. I. The first error assigned for reversal of the judgment is the refusal of the court to order Mrs. Tate to be made a defendant to the action. If she is primarily liable for the consequences of a defective sidewalk in front of her lots, she should be a party. She is so liable under ch. 471, Laws of 1889, if it was her duty to keep such sidewalk in repair. S. & B. Ann. Stats. secs. 1339*b*, 1339*c*.

An ordinance of the defendant city, adopted in 1880, was read in evidence, which charges all owners of lots in the city with the duty of keeping the sidewalk in front of their respective lots in repair. If this is a valid ordinance, Mrs. Tate is primarily liable for the injuries complained of, and should be a party to this action. Is the ordinance valid? If it is so, the authority to enact it must be found in the provisions of the city charter, for we are referred to no other statute imposing such liability. The city charter is ch. 148, Laws of 1873. We find in that instrument authority conferred upon the common council, on the application of the owners of two thirds of the lots on any street or part of a street, or on one side of any block, to levy and collect a special tax on the owners of the lots on such street or part of street, according to their respective parts, for the purpose of making a sidewalk along the same, or grading, paving, and improving the street along the same. Charter, subch. 1, sec. 19, subd. 19 (Laws of 1873, p. 199). The next section provides that, when such special tax is thus levied, notices therein prescribed shall be given by the street commissioner, fixing a time when persons charged with such taxes may pay the same in labor, materials, or money. The act provides further that "the persons charged with such tax may, within such time and at such

place as may be required by such street commissioner, pay their taxes in labor or materials: *provided*, the labor and materials offered in payment for such taxes are suitable and such as may be required by the said street commissioner." These are the provisions of the charter bearing most directly on the question under consideration. For the purposes of this case it will be assumed that they authorize the levy of a special tax for the cost of repairing as well as making sidewalks. If the primary liability of Mrs. Tate for the consequences of the alleged defects in the sidewalk in question exists at all, it must be found in the above provisions of the charter. It is perfectly clear that those provisions fall far short of imposing upon her the duty to keep the sidewalk in repair. True, the charter gives her an option to pay her special tax for the cost of building and (as we assume) of repairing the sidewalk in labor or materials, but this must be done under the immediate supervision and control of the street commissioner. Briefly stated, the situation seems to be this: The charter imposes upon the city the obligation to build sidewalks and keep them in repair, and upon the lot-owners to pay the cost thereof. It gives the owners the option to pay in labor or materials, or both, under the supervision of the street commissioner; but it does not give them any control over the construction or repair of the sidewalks, or charge them with any duty in respect thereto other than to pay the cost thereof. It leaves not only the primary, but the entire, obligation upon the city to build the walks, and keep them in repair.

It is immaterial that the city ordinance of 1880, by which it was attempted to place such obligation upon the lot-owners, has been acquiesced in by all parties since its adoption. The charter fails to confer authority upon the common council to impose such burden upon lot-owners, and no mere acquiescence, no matter how long continued, can operate to confer an authority the exercise of which

Woodward vs. The City of Boscobel.

puts lot-owners in peril of being subjected (as it is here at-
tempted to subject Mrs. Tate) to the payment of heavy
damages for which they would not otherwise be liable.

We conclude that the ordinance under consideration is
invalid; that Mrs. Tate was under no legal obligation to
repair the sidewalk in question; and hence that the court
properly refused to compel the plaintiff to make her a
party to the action.

II. The next error assigned is that there is no evidence
to support the finding that the city had either actual or
constructive notice of the defect in the sidewalk a sufficient
time before the plaintiff was injured to have repaired the
same, and hence that the question of such notice should
nôt have been submitted to the jury.

In addition to the admission in the answer that the side-
walk was out of repair (which may fairly be implied from
the averment that the street commissioner, shortly before
plaintiff was injured, notified Mrs. Tate to repair the same),
the proofs show quite satisfactorily, if not conclusively,
that the sidewalk in question was out of repair in the
spring of 1889; also that after Onstine repaired the walk
by direction of the street commissioner, the same was ap-
parently in good condition and reasonably safe for the
public use.    At least it so appeared to persons passing over
the walk, because the alleged defect could not be seen by
them.    The position of the city is that the defect was a
hidden or latent one, and that the city cannot be charged
with mere constructive notice of its existence, but must
have actual notice thereof before liability attaches for in-
juries caused by it.    Counsel for the city proposed an in-
struction to the jury covering this view of the case, but the
court declined to give it.    This instruction probably con-
tains a correct statement of the law in a case to which it is
applicable.    The question arises, therefore, whether the city
may successfully assert that, as to it, the defect was latent.

Woodward vs. The City of Boscobel.

The defect was that the ends of the short piece, of plank put in the walk by Onstine were, or one end thereof was, insufficiently supported. Onstine was a relative of Mrs. Tate, and the occupant of her lots (she not residing thereon), and he evidently repaired the sidewalk for her as her agent or representative. Were she under legal obligation to keep the walk in repair, there might be force in the position that, because the walk was so repaired by Onstine that one passing over it could not detect any fault in its condition, the defect must, as to the city, be regarded as latent, requiring actual notice of its existence before liability attaches to the city for injuries caused by it. But we have seen that the obligation to repair the walk was primarily and entirely upon the city. Such obligation is unaffected by the fact that Onstine repaired the walk in the spring of 1889, when required to do so by the street commissioner. In contemplation of law the repairs were made under the supervision of the street commissioner, and the city is just as responsible for the manner in which the work was done as it would have been had the city hired Onstine or any other person to make such repairs under the supervision and control of its street commissioner. In either case it is the city which creates or continues the defect, no matter through whose unskilfulness or carelessness; and it must be conclusively presumed that the city knew of the defect in question and is responsible for it. The rules of latent or hidden defects have no application here.

As already observed, there is abundant testimony tending to show that the walk in question was out of repair in the spring of 1889, and the jury were justified in finding on this testimony that, in the exercise of reasonable diligence, the city authorities should have discovered the defects and removed them. The city having been held chargeable at least with constructive notice that the walk

was defective, the obligation to repair it continued until the same was put in proper repair. It does not appear that this was done before the plaintiff was injured. Certainly there was sufficient testimony to send to the jury the question whether the short plank was properly inserted in the walk.

The alleged errors based upon the theory that plaintiff was injured because of a latent defect in the walk, of which the city had no actual notice, are not well assigned.

III. The only remaining assignment of error relied upon as ground for a reversal of the judgment arises upon the refusal of the court to give the jury an instruction on the subject of damages, proposed on behalf of the city. The testimony tended to show that plaintiff was in somewhat feeble health, and that he manifested a tendency to pulmonary disease, which was hereditary in his family. The instruction thus proposed is as follows: " If the finding of the jury makes it necessary to estimate any amount of damages in favor of the plaintiff by reason of injuries received from a fall on the sidewalk, they will carefully exclude from estimating such amount upon any disability arising from sickness or ill health caused by, or reasonably attributable to, any predisposition of the plaintiff to disease or over-exertion on his part, if you find that such predisposition existed or that the plaintiff had theretofore over-exerted himself; and the same rule must be observed as to any disability arising from any predisposition of the plaintiff to disease or disability arising from the loss of a leg."

We are not quite sure of the scope and meaning of the proposed instruction. A man may belong to a family many members of which have died of pulmonary disease. He may show in his person and condition the premonitory symptoms of the disease to an extent that competent physicians might say he was liable to die of it in a few years,

perhaps before reaching middle life, yet, by careful atten-
tion to his health he may, under favorable conditions, live
to old age, and have an active and successful career.   But
the same man may, when comparatively young, receive a
bodily injury, the result of which may be to develop the
disease and thereby destroy his ability to labor or earn
money.   Now, if the proposed instruction means that in
the case supposed the jury cannot give damages for loss of
ability to labor and earn money because the injury has de-
veloped the hereditary disease which thus becomes an ele-
ment in the disability complained of, we are not prepared
to hold that it should have been given.   The jury might,
and probably would, have thus understood the instruction
had it been given.   We cannot say, therefore, that the
refusal to give it was error.   The true rule of damages is
that, if otherwise entitled to recover, the plaintiff may
properly be compensated for time lost and pain and suffer-
ing endured, or which it is reasonably certain he will lose
and endure in the future, caused directly by the injuries he
received.   The learned circuit judge so instructed the jury.

We find no error disclosed in the record.

*By the Court.*— The judgment of the circuit court is af-
firmed.