GEORGE T. O'HAVER *v.* S. R. MONTGOMERY.

*(Jackson.* April Term, 1908.)

1. **MUNICIPAL CORPORATIONS.** Violations of ordinances are offenses against, called misdemeanors; same offense punishable by city and State, when; ordinances must be reasonable.

The word "misdemeanor," as used in statutes conferring power upon municipal corporations, is not wholly synonymous with the same term as used at common law or in general statutes defining offenses against the State of a grade less than that of a felony, but has a more restricted meaning, and is limited to offenses against the smaller local government; and, while an offense against a city may also be an offense against the State, punishable by both jurisdictions, there are many offenses against municipalities which are not offenses against the State, and which the legislative bodies of municipal corporations are authorized to define and declare by ordinance, subject to the condition that such ordinance is not in violation of the constitution or general laws of the State or the charter of the corporation, and is not unreasonable. (*Post, p.* 456.)

Cases cited and approved: Trigally v. Mayor, 6 Cold., 388; Greenwood v. State, 6 Bax., 567, 573, 574; State v. Mason, 3 Lea, 649; Ogden v. Madison, 111 Wis., 413.

2. **SAME.** Power to create offenses must be vested by legislature, when.

The power of municipal corporations to define and declare by ordinance what shall be offenses against them must be vested in them by the legislature, either by direct grant or by implication necessarily attendant on the mere existence of the corporations as creations of law, and when the grant of power is direct, it may be by either special provisions, or general, or both. (*Post, pp.* 456, 457.)

O'Haver v. Montgomery.

Cases cited and approved: Smith v. Knoxville, 3 Head, 245, 248; Long v. Taxing District, 7 Lea, 134, 136; Nashville v. Linck, 12 Lea, 499, 508, *et seq.*

3. **SAME. Power to imprison for violation of ordinances or for failure to pay fine must be conferred by legislature; other prerequisites.**

The power of a municipal corporation to imprison for the violation of a city ordinance or for failure to pay a fine assessed for such violation must be expressly and clearly conferred by the legislature; and there must be a judicial ascertainment of the offense and assessment of the fine and penalty before the imprisonment can be inflicted. (*Post, p.* 457.)

4. **SAME. Same. Instance in judgment where such power was conferred by legislation.**

The charter of the city of Memphis, by its provisions (contained in Acts 1879, ch. 11, sec. 3; Id., ch. 84, sec. 1, and amendments) that the city shall have the power to establish workhouses, and houses of correction, to declare by local laws what acts shall be misdemeanors, and to punish offenders by fines and forfeitures and by imprisonment and labor, in default of payment of fines, expressly conferred upon said city the right to declare and define by ordinance what are violations of its laws, and to assess fines for such violations, and to imprison the offender until the fine is secured or paid in money or work. (*Post, pp.* 458, 459.)

Acts cited and construed: Acts 1879, ch. 11, sec. 3; Id., ch. 84, sec. 1; and amendments thereto.

Cases cited and approved: Hogan v. Chattanooga, 2 Shannon's Tenn. Cas., 339, 341; Mosley v. Gallatin, 10 Lea, 494; State v. Taxing District, 16 Lea, 240, 250, 251.

5. **SAME. Prosecution for violation of city ordinance is in the nature of both a civil and criminal proceeding; appeals.**

A prosecution for the violation of a municipal ordinance partakes of both a civil and criminal character. The accused is arrested

120 Tenn—29

O'Haver v. Montgomery.

on a warrant as in criminal cases, and, if found guilty, a judgment is entered against him as for a fine, and, on failure to pay the fine, he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment, he may appeal as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the circuit court, where the matter will be heard *de novo*, under the rules of practice applicable to civil cases. (*Post, pp.* 459, 460.)

Cases cited and approved: Meaher v. Chattanooga, 1 Head, 75; Wood v. Grand Junction, 5 Heisk., 440; Memphis v. Schade, 12 Heisk., 579; Bristol v. Burrow, 5 Lea, 128; State v. Haynes, 104 Tenn., 406, 409; Memphis v. Smythe, 104 Tenn., 702.

6. **SAME.** Same. **Power to make effective punishment for offenses; same power exercised in appellate court of the State.**
A municipality is a government within itself, and must have the power to punish for offenses against its laws, and must be able to bring that punishment to bear and to make it effective by its own agencies; and where the right of appeal is given and is exercised by the alleged offender, the municipality appears as a suitor in the appellate court to recover the penalty assessed against the alleged offender, but the appellate court, while trying the controversy as a civil suit, will see to it that the municipality, if successful, shall have there the same sanctions for the enforcement of its laws as if the trial had terminated in the municipal court. (*Post, pp.* 460, 461.)

7. **SAME.** **Power to require sidewalks to be constructed by abutting lot owners must be construed strictly but not narrowly.**
While the power of a municipality to compel abutting lot owners to construct sidewalks along the streets in front of their lots is required to be expressly conferred by statute, and should be strictly construed in favor of the personal liberty of the individual citizen and his rights of property, the courts should ever be mindful of the needs of large masses of people grouped together in the cities, and the necessity of efficient government,

O'Haver v. Montgomery.

to the end that not only the health and the good order of the citizens shall be maintained, but that reasonable conveniences may be from time to time added for the attainment of public comfort and general well being. Therefore, the denizens of cities must, for the common good, occasionally submit to exactions that would not be considered reasonable in communities where the population is sparse; and hence, while the construction of such statutes should be strict, it should not be narrow. (*Post, pp.* 461-464.)

Cases cited and approved: Franklin v. Maory, 6 Humph., 368; Washington v. Mayor, 1 Swan, 180; White v. Mayor, 2 Swan, 364; Smith v. Insurance Co., 3 Tenn. Chy., 631; Nashville v. Berry, 2 Shannon's Tenn. Cas., 561; Nashville v. Linck, 12 Lea, 499, 505, *et seq.;* Gridly v. Bloomington, 88 Ill., 557; Chicago v. Crosby, 111 Ill., 538; Woodward v. Boscobel, 84 Wis., 226.

8. **SAME. Statute conferring upon a city power to require by ordinance the construction of sidewalks by abutters.**

The charter of the city of Memphis, by its provision (contained in Acts 1879, ch. 11, sec. 3; Id., ch. 84, sec. 1, as amended by Acts 1887, ch. 233) that the city shall have power "to compel lot owners to make safe and proper sidewalks of brick, plank, stone, or granolith," conferred upon the city the power to provide by ordinance for the building of granolith sidewalks by abutting lot owners. (*Post, p.* 464.)

Acts cited and construed: Acts 1879, ch. 11, sec. 3; Id., ch. 84, sec. 1; Acts 1887, ch. 233.

9. **SAME. Same. Power of city to require and enforce construction of sidewalks by fine and imprisonment; case in judgment.**

Under the charter of the city of Memphis providing (in Acts 1879, ch. 11, sec. 3; Id., ch. 84, sec. 1; Acts 1887, ch. 233; and amendments thereto) that the city shall have the power to establish workhouses, and houses of correction, and to declare what acts shall be misdemeanors, and to punish the offend-

ers by fine, and by imprisonment at labor in default of payment of the fine; and declaring that the city shall have power to compel lot owners to make safe and proper sidewalks of brick, plank, stone, or granolith, the city may by ordinance require abutting lotowners to construct sidewalks as the legislative council shall declare by resolution, and may provide that a failure to conform to the ordinance shall be a misdemeanor and subject the offender, upon conviction, to a fine, and that an offender failing to pay the fine imposed may be committed to the workhouse until the fine shall be paid or worked out. This is not imprisonment for debt. The violation of the requirement of the ordinance does not create a debt, but a misdemeanor for which a fine or penalty is inflicted to enforce the ordinance. (*Post, pp.* 464-468.)

10. **SAME. City ordinance authorized by legislature imposing fine for its violation, and imprisonment for its nonpayment, is not unreasonable, when.**

A city ordinance which merely exercises the power conferred by the legislature, within the express case contemplated by the legislature, is not unreasonable. An ordinance imposing a fine or penalty for its violation, and enforcing the payment of the same by imprisonment and labor is not, on that account, unreasonable. (*Post, p.* 467.)

11. **SAME. Habeas corpus to test right to fine for violation of a city ordinance, and to imprison for its nonpayment.**

One convicted of violating a municipal ordinance and committed to the workhouse until the fine imposed shall be paid or worked out may test his right to relief by *habeas corpus.* (*Post, p.* 468.)

Cases cited: State v. Galloway, 5 Cold., 326; State v. Taxing District, 16 Lea, 240, 249, 250, 251; McLendon v. State, 92 Tenn., 520; and numerous cases in other States cited in the opinion on page 468.

O'Haver v. Montgomery.

FROM SHELBY.

Appeal from the Probate Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals.—J. S. GALLOWAY, Judge.

THOS. H. JACKSON and M. G. EVANS, for O'Haver.

BELL, TERRY, ANDERSON & BELL, for Montgomery.

MR. JUSTICE NEIL delivered the opinion of the Court.

On the 19th of September, 1907, an affidavit was made before Hon. A. C. Floyd, city judge of the corporation of Memphis, that on the day mentioned S. R. Montgomery had committed the offense of failing and refusing to lay a granolith sidewalk to curb at 1210 Poplar avenue, pursuant to notice served on him April 5, 1907, contrary to law and the ordinances of the city. Upon this affidavit being made, a warrant was issued for the arrest of Mr. Montgomery, and he was accordingly arrested and brought before Judge Floyd for trial. On the 2d of October, Mr. Montgomery was tried and found guilty, and sentenced to pay a fine of $50, and in default of payment, or security therefor, to be committed to the workhouse until the fine should be secured, paid, or worked out. Failing to pay the fine, a *mittimus* was issued to the keeper of the workhouse, directing Mr.

Montgomery to be kept at labor, as authorized by the ordinances of the city for the period of 125 days, unless the fine should be sooner paid, or unless he should be sooner delivered according to law. Thereupon Mr. Montgomery filed a petition for habeas corpus before Hon. J. S. Galloway, judge of probate court of Shelby county, alleging that he was illegally restrained of his liberty by George T. O'Haver, chief of police of the city of Memphis, that he was tried pursuant to the proceedings above referred to, and that the ordinance under which he was convicted was unconstitutional and void. The writ was issued and a return made by the officer, and in due time the cause was tried before Judge Galloway, resulting in a judgment that Mr. Montgomery was illegally restrained of his liberty and releasing him from custody. The chief of police appealed to the court of civil appeals, and in that court the judgment of Judge Galloway was affirmed. To correct the latter judgment a petition for *certiorari* was filed in this court, asking that the cause be brought here and retried.

The ordinance is set out in the record, but it need only be stated that it contained provisions to the effect that the legislative council should by resolution or order designate the particular sidewalks and parts of sidewalks on which the owners and claimants of city lots were required to construct pavements, or repair pavements, in front of such lots, and the width of the pavements and the material out of which they should be constructed; that upon the adoption of such resolution the

mayor should prepare a copy thereof from the minutes of the legislative council and cause the same to be transmitted to the chief of police; that it should thereupon be the duty of the latter to cause personal notice to be given in writing to such owners, claimants, and occupants, or agents of owners, claimants, and occupants, in front of whose lots pavements or sidewalks had been so ordered, to construct the pavements in thirty days. The ordinance contained certain provisions concerning the method of construction of the sidewalks, the dimensions, etc. The resolution of the legislative council directed that the pavements should be laid in granolith. The defendant in error received due notice, but declined to construct the pavement, as already stated.

There are provisions in the ordinance other than those above mentioned, but they do not affect the present inquiry, and need not be referred to, except to say that the eighth section contains the provisions under which the defendant in error was arrested, and this section will be presently set out *in totidem verbis*.

Assuming for the present that the legislative council of Memphis had the power to pass an ordinance requiring the citizens and property owners of the municipality to lay sidewalks of the description contained in the ordinance in question, we shall proceed to examine into the validity of section 8, and the right asserted by the city to imprison in default of payment of the fine therein authorized.

The section referred to reads "that a violation or fail-

ure to conform to this ordinance shall be a misdemeanor, subjecting the offender upon conviction, to a fine of not less than one dollar, nor more than fifty dollars."

The word "misdemeanor," as employed in statutes conferring power upon municipal corporations, is not wholly synonymous with the same term as used at common law, or in general statutes defining offenses against the State of a grade less than felony, but has a more restricted meaning, being limited to offenses against the smaller local government. However, it may happen, and often does happen, that an offense against the city may also be an offense against the State, and both jurisdictions may punish (*Greenwood* v. *State*, 6 Baxt., 567, 573, 574, 32 Am. Rep., 539; *State* v. *Mason,* 3 Lea, 649; *Ogden* v. *Madison,* 111 Wis., 413, 87 N. W., 568, 55 L. R. A., 506); but there are many offenses against municipalities which are not offenses against the State, and which the legislative bodies of municipal corporations are authorized to define and declare by ordinance (*Trigally* v. *Mayor,* 6 Cold., 388; 2 Abb., Munic. Corp., pp. 1311, 1312, section 519), subject, of course, to the condition that such ordinance is not in violation of the constitution or general laws of the State, or the charter of the corporation itself, and is not unreasonable. But this power must be vested in them by the legislature, which may be accomplished either by direct grant, or to some extent by the implication necessarily attendant upon the mere existence of the corporation as a creation of law (1 Dill., Munic. Corp., secs. 315, 316; 2

Abb., Munic. Corp., pp. 1299, 1300, 1308-1311; *Smith &* *Lackey* v. *Mayor of Knoxville*, 3 Head, 245, 248) ; and when the grant of power is direct it may be by either special provisions or general, or by both (*Mayor, etc., of Nashville* v. *Linck*, 12 Lea, 499, 508, *et seq.; Long* v. *Taxing District*, 7 Lea, 134, 136, 40 Am. Rep., 55 *et seq.*).

The power to imprison for violation of an ordinance, or for failure to pay a fine assessed for violation of an ordinance, must be expressly conferred by the legislature, and there must be a judicial ascertainment of the offense and assessment of the fine and penalty before the imprisonment can be inflicted. The power must be clear before it can be held to exist or be used. 1 Dill., Munic. Corp. (3d Ed.), sec. 353. Such powers, however, are frequently devolved upon municipal corporations in this country. 2 Abb., Munic. Corp., pp. 1367, 1368, sec. 553.

In the charter of Memphis both powers were expressly conferred by the legislature. In section 3, c. 11, p. 16, and section 1, c. 84, p. 98, of the Acts of 1879, which, with subsequent amendments thereto, constitute the charter of the city, it is provided: "That the local government established by this act shall have power to establish workhouses, and houses of correction, to declare by local laws, what acts shall be misdemeanors, and when committed within the taxing district to punish the offenders by fines and forfeitures and by imprisonment and labor, within and without the workhouse, in default of payment of the fines imposed as punishment."

These provisions were expressly approved and applied

as far back as the April term, 1886, of this court, in the case of *State, etc.,* v. *Taxing District of Shelby County,* 16 Lea, 240, 250, 251; and as early as the December term, 1882, it was held that the constitutional provision that "the legislature shall pass no law authorizing imprisonment for debt in civil cases" had no reference to the enforcement of the collection of fines, penalties, and costs from defendants convicted of the violation of ordinances of municipal corporations. *Mosley* v. *Gallatin,* 10 Lea, 494.

The charter of Gallatin applied in that case contained the provision that "any person who shall fail or neglect to pay any fine or costs imposed upon him by any ordinance of said town shall be committed to the workhouse until such fine and costs shall be fully paid." At the last term at Nashville, in the case of *Till Gannaway* v. *City of Murfreesboro* (no opinion filed), the court recognized as valid and applied subsection 21 of section 8 of the charter of that city, reading as follows: "That the city council shall have full power and authority by ordinance, within the municipality, to impose fines, forfeitures and penalties, for the breach of any ordinance, and to punish by imprisonment within or without workhouses, in default of payment of fines and costs: Provided, that imprisonment shall not last longer than three months, and the expense of conviction as fixed by law."

The charters of the various municipalities of the State generally, it is believed, contain similar provisions. It

is true that at the September term, 1877, in the case of *Hogan* v. *Mayor and Aldermen of Chattanooga,* the question was reserved whether the power to imprison existed, while it was conceded that the offender might be arrested and "held in custody and compelled to secure the penalty." 2 Shan., Tenn. Cas., 339, 341. However, as seen, the question has been fully settled in later cases.

It is true that in several cases (*Meaher* v. *Mayor and Aldermen of Chattanooga,* 1 Head, 75; *Wood* v. *Mayor and Aldermen of Grand Junction,* 5 Heisk., 440; *Mayor of Bristol* v. *Burrow,* 5 Lea, 128; *Memphis* v. *Smythe,* 104 Tenn., 702, 58 S. W., 215; and see *City of Memphis* v. *William Schade,* 12 Heisk., 579) actions of the kind by municipal corporations are called, in some of them civil actions, and in others *quasi* civil actions, and it is said that appeals lie from recorders' courts as in civil cases, and that the mode of trial is the same; yet in none of them did the question arise which was considered in the cases cited in the previous paragraph. In the cases now referred to the court was considering merely the question of practice as to the right of appeal, and the mode of trial in the circuit court. In truth, when a violator of a municipal ordinance is arrested and brought before the municipal court, he is tried for an offense committed against the laws of the corporation; but, in the absence of apt legislation to the contrary, his punishment is in the form of the assessment of a penalty. The practice partakes of both a civil and

criminal character.  He is arrested on warrant as in criminal cases, and if found guilty a judgment is entered against him as for a fine, and on failure to pay the amount assessed against him he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment he may appeal, as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the circuit court, where the matter will be heard *de novo,* the rules of practice applicable to civil cases applying in such trial; but at last the purpose of the action is punishment.  So it is perceived the action is partly criminal and partly civil; a criminal action in substance and purpose, and partly civil and partly criminal in the practice governing it.  When we characterize the action as being of a criminal nature, we do not mean to be understood as using the term wholly in the sense in which it is applicable to actions brought by the State in the form of indictments and presentments for violations of the criminal laws of the State, but rather by analogy, and for want of a better term. *State* v. *Haynes,* 104 Tenn., 406, 409, 58 S. W., 120.  A municipality is a government within itself, and must have the power to punish for offenses against its laws, and must be able to bring that punishment to bear and to make it effective by its own agencies, that is, through its own courts and officers.  However, the right of appeal may be given, and generally is given, and, if exercised, the municipality appears in another jurisdiction; that is, in the courts

of the State, as a suitor to recover the penalty which it has assessed against the violator of its laws. But the larger court, while trying the controversy as a civil suit, will see to it that the municipality, if successful, shall have there the same sanctions for the enforcement of its laws as if the trial had terminated in the municipal court. In truth, the action is in its various aspects a hybrid one, partly criminal and partly civil.

It being determined that the city of Memphis has the right to declare and define by ordinance (subject to the limitations that condition all ordinances) what are violations of its laws, and to assess fines for such violations, and to imprison the offender until the fine is secured or paid in money or work, it follows that section 8 of the ordinance in question is valid, if the ordinance of which it is a part is otherwise valid.

Such powers as those applied in the ordinance, when given at all to municipalities, are usually conferred by express legislation to that end. *Mayor and Aldermen of Franklin* v. *Mabry,* 6 Humph., 368, 44 Am. Dec., 315; *Washington* v. *Mayor,* 1 Swan, 180; *Whyte* v. *Mayor,* 2 Swan, 364; 27 Am. and Eng. Ency. Law (2d Ed.), p. 120, note 11, citing many cases; title "Streets and Sidewalks" also, page 119, note 12, and page 123, notes 4, 5, 6. It is also said that in the absence of statutory provisions such duty cannot be imposed upon abutting owners. Id., p. 121, note 1, citing *Gridly* v. *Blooming-ton,* 88 Ill., 557, 30 Am. Rep., 566; *Chicago* v. *Crosby,* 111 Ill., 538; *Woodward* v. *Boscobel,* 84 Wis., 226, 54

N. W., 332. Such provisions are in the nature of special assessments (1 Abb., Munic. Corp., p. 858), and they are strictly construed in favor of the citizen (*Washington* v. *Mayor,* supra; *Smith* v. *St. Louis Mut. L. Ins. Co.,* 3 Tenn. Ch., 631). It is said that the power must be given in clear and unmistakable terms, and cannot be implied from a general grant of power to a municipal corporation, nor from the general power to make public improvements, or the ordinary grant of power to levy taxes, or from the general welfare clause usually found in the charters of such corporations (1 Abb., Munic. Corp., pp. 786-788, and notes), although on many subjects the courts go quite far in sustaining action under the general welfare clause, where there is no antecedent specifications by which its terms may be limited (*Mayor,. etc., of Nashville* v. *Linck,* 12 Lea, 499, 505, *et seq.*). And under an authority to make such by-laws as to the common council shall seem "necessary for the good government of the city, and for the regulation and paving of the streets and highways," it is said that a city corporation may pass an ordinance requiring the owner of every lot fronting on a designated section of a public street to fix curbstones, and make a brick way or sidewalk in front of his lot. 2 Dill., Munic. Corp. (3d Ed.), p. 795, sec. 798. And it has been held in this State that the legislature may grant to municipal corporations not only the power to compel abutting owners to construct sidewalks, but that after a reasonable time, and on failure of such owner, they may do the work through their

own agencies, and thereby obtain a lien upon the property for reimbursement. *Nashville* v. *Berry*, 2 Shan., Tenn. Cas., 561.

While, as stated, all such powers should be strictly construed in favor of the personal liberty of the individual citizen and his rights of property, the courts should ever be mindful of the needs of large masses of people grouped together in cities, and the necessity of efficient government, to the end that not only the health and the good order of the citizens shall be maintained, but that reasonable conveniences may be from time to time added for the attainment of public comfort and general well-being, therefore that the denizens of cities must for the common good occasionally submit to exactions that would not be considered reasonable in communities where the population is sparse, and hence that, while the construction of such statutes should be strict, it should not be narrow.

Municipalities enjoy considerable autonomy under the sovereignty of the State. They are instrumentalities of the State govenment, whose function and duty it is to relieve the latter of the cares entailed in administering the affairs of relatively large aggregations of population within small areas, which necessarily have many interests peculiar to their situation and environment, that touch only in a remote way, if at all, the interests of the general government over them, enabling the latter to decentralize as much as may be safe and convenient the powers of government, committing to the communi-

ties immediately affected the care of concerns peculiar to themselves, and at the same time retaining always the power to guard, to check, and to change, as experience may indicate the need, and wisdom suggest the means, of betterment. It should be borne in mind, as one of the lessons of history, that the chief advances in all lines of popular development have been through the growth and nurture or urban life, or at least in those communities where men are gathered in masses and have the opportunity of rapid interchange of thought and action.

In the case of the city of Memphis there seems no doubt of the existence of statutory authority. In section 3, c. 11, p. 16, of the Acts of 1879, and section 1, c. 84, p. 98, of the Acts of same year, it is provided that the city shall have power "to compel lot owners to make safe and proper sidewalks of brick or plank adjoining their lots." In chapter 233, p. 394, of the Acts of 1887, this provision was amended so as to read "to compel lot owners to make safe and proper sidewalks of brick, plank, stone or granolith." The law with reference to sidewalks was also amended by Acts 1881, p. 116, c. 96, sec. 24, and Acts 1889, p. 309, c. 163, sec. 1; but, as these amendments have no bearing upon the phase of the question we now have before us, they need not be more particularly mentioned. From the language quoted from these legislative acts it is perceived that the ordinance in question is expressly and unmistakably within its terms, and is therefore beyond question valid. We

O'Haver v. Montgomery.

have seen that under the same legislative authority the city had power to declare and define what acts were violative of its laws; that through its proper legislative agency it did declare, in the form of an ordinance, that a failure to lay a sidewalk in obedience to the ordinance would be a misdemeanor, "subjecting the offender, upon conviction, to a fine of not less than one dollar nor more than fifty dollars;" that the legislature of the State declared that where ordinances should be violated the city should have power to punish the offender by fine and by imprisonment at labor within its workhouse and without its workhouse, "in default of the payment of the fine imposed as punishment;" that the defendant in error, Montgomery, did violate the ordinance by failing and refusing to lay a sidewalk in front of his premises when notified to do so; that this failure of duty was duly ascertained in a judicial proceeding, and judgment entered against him for a fine of $50; that he failed to pay or secure the fine, and upon this default was committed to the workhouse for 125 days, unless the fine should be sooner paid, or he be delivered according to law.  On these facts, and on the law as declared, there can be no doubt that Judge Galloway committed error in directing the prisoner to be discharged, and that the court of civil appeals committed error in sustaining his action.

We have not been provided with a brief in behalf of the defendant in error, and we infer that his case rested

upon the grounds stated in the opinion of the court of civil appeals.

The reasons assigned by that court to sustain its judgment are fully stated in the following excerpt from its opinion, viz.:

"Under the law the city of Memphis had the right to enact what is known as a 'sidewalk ordinance,' and to require the owners of property abutting upon its streets to construct sidewalks in front thereof. This requirement simply created a debt against the abutting property owner, which, under a proper construction of the law, became a lien upon the property which the city could enforce in its favor upon its construction of the sidewalk against the property for its reimbursement. The essential basic idea of sidewalk legislation, it being a charge against abutting property owners and a lien upon the abutting property, is that it is a debt recoverable out of the property, if it cannot be recovered otherwise against the property owner. Being in its essential nature a debt, the obligor owing the debt cannot be imprisoned under our constitution for its nonpayment, and especially is this so as it is a debt in the nature, as well, of a debt *in rem.*"

The fundamental error in this reasoning, as applied to the present case, is that the facts show no debt. The city did not perform the work at all, and acquired no debt against the defendant, and there is no evidence whatever in the record, and no claim by any one, that the city did acquire such debt. The opinion of the

court of civil appeals is therefore based upon an incorrect assumption, does not apply to the case made by the record, and the reasons given by it do not support the defendant in error.  The arrest of the defendant was predicated, not upon the fact that he owed the city a debt, but that in refusing to lay the sidewalk he had violated an ordinance, and had thereby become guilty of committing a misdemeanor against the laws of the corporation.  If it be objected that the city had no power to declare such violation a misdemeanor, no further reply is needed than a reference to the language of the charter conferring the power.  If it be objected that the ordinance is unreasonable, and therefore void, the same reply is all-sufficient.  An ordinance cannot be unreasonable which merely exercises power conferred by the legislature within the express case contemplated by the legislative act.  If it be objected that section 8 is unreasonable, and therefore void, the charter power furnishes an equally effective answer.  Power was conferred by the legislature upon the city to compel lot owners to lay sidewalks.  That compulsion can be made actual only by ordinance.  An ordinance without a penalty for its violation is a dead letter.  A penalty that cannot be enforced is but a vain threat, evoking the derision of mankind.  The method of enforcement is unmistakably pointed out by the legislature; that is, failure to pay the penalty shall be followed by imprisonment until security is furnished, or the payment made in

money or labor.  A law with such sanctions has dignity and force.  Without them it is but a *brutum fulmen.*

We do not deem it necessary to discuss the question whether the points made in the case could be properly presented in a *habeas corpus* proceeding, since the importance of the matters involved requires a decision on the merits.  However, although the defendant in error might have appealed to the circuit court of the county, and thence reached this court in regular course, we think he could also test his right to relief by an application for the writ of *habeas corpus,* though the authorities upon the subject are not without conflict. 2 Abb., Munic. Corp., pp. 1380, 1381, note 395, and cases cited; *Badkins* v. *Robinson,* 53 Ga., 613; *Flack* v. *Fry,* 32 W. Va., 364, 9 S. E., 240; *Ex parte Smith,* 135 Mo., 223, 36 S. W., 628, 33 L. R. A., 606, 58 Am. St. Rep., 576.  And see the following additional cases: *Ex parte Lucas,* 160 Mo., 236, 61 S. W., 218; *Ex parte Neet,* 157 Mo., 537, 57 S. W., 1025, 80 Am. St. Rep., 638; *Re Flukes,* 157 Mo., 127, 57 S. W., 545, 51 L. R. A., 176, 80 Am. St. Rep., 619; *State, ex rel. Anheuser-Busch Brewing Association,* v. *Eby,* 170 Mo., 525, 71 S. W., 52.

And upon the general subject, see our own cases: *State* v. *Galloway,* 5 Cold, 326, 98 Am. Dec., 404; *State, etc.,* v. *Taxing District of Shelby County,* 16 Lea, 240, 249, 250, 251; *McLendon* v. *State,* 92 Tenn., 520, 22 S. W., 200, 21 L. R. A., 738.

It results that the *certiorari* to the court of civil appeals must be granted, and that a judgment must be

rendered here reversing the judgment of that court, and remanding the defendant in error to the custody of the plaintiff in error.

The defendant in error will pay the costs of this proceeding.