Dieterich, J.
On September 10, 1956, an excavation was dug by a contractor in the approximate location of the depression which caused the accident and injuries to the plaintiffs. This excavation was made under a permit issued by the city of Milwaukee to the contractor for the purpose of laying a sewer lateral to a house fronting on West Beckett avenue.
The statutes of Wisconsin impose upon a city the duty to keep its streets in proper repair. Sec. 62.14 (6), Stats. 1957, provides:
“Duties and powers, (a) In general. It shall be the duty of the board, under the direction of the council, to superintend all public works and keep the streets, alleys, sewers, and public works and places in repair.”
The statutes also authorize a person injured by reason of the insufficiency or want of repair of a street to recover damages. Sec. 81.15, Stats. 1957, reads in part as follows:
“Damages caused by highway defects; liability of town and county. If damages happen to any person or his property by reason of the insufficiency or want of repairs of any highway which any town, city, or village is bound to keep in repair, the person sustaining such damages shall have a right to recover the same from such town, city, or village, . . .”
*557 It is quite apparent from the testimony that the excavation was backfilled on September-13, 1956, by the contractor, and that an inspection was made by a city inspector on the same day. The city of Milwaukee records contained no notation that the backfill was faulty.
On March 30, 1957, plaintiff, Wendell Murphy, was driving his automobile in a southeasterly direction on West Beckett avenue in the city of Milwaukee. The coplaintiff, Wendy Murphy, daughter of the plaintiff, Wendell Murphy, was a passenger in the front seat next to her father. As plaintiff drove along said avenue the front wheels of his car fell into a hole, which extended approximately from the center line of the street southwesterly across the roadway. As the plaintiffs car entered the depression it straddled a manhole, the undercarriage of the automobile struck the manhole causing the vehicle to come to an abrupt stop. This sudden stop threw the plaintiff forward into the steering wheel of his automobile and the coplaintiff forward into the dashboard, both sustaining personal injuries.
It is undisputed that the plaintiffs-respondents sustained personal injuries on March 30, 1957, as a result of striking the depression in West Beckett avenue.
There was no evidence showing how long before the plaintiffs’ accident the depression had become deep enough to be dangerous. The city contends that since the excavation had been filled to street level at the time of the inspection in September, and the inspector had observed nothing wrong with the fill, the city could not be liable for injuries caused by the subsequent depression of which the city had neither actual nor constructive notice. It relies on Strang v. Kenosha (1921), 174 Wis. 480, 182 N. W. 741. There a plumber made an excavation, pursuant to permit, on April 10th. It was filled within a day or two. After settling, it was filled *558 again on April 24th, and examined and repaired by a city employee on April 26th, the day of the accident. The court said, at page 485: “The city having once repaired the street at the place in question, in order to make it liable it must have notice, actual or constructive, of a subsequent defect and a reasonable opportunity to repair.”
Plaintiffs counter with the principle that the city has a duty to -put a highway into proper repair after knowing of a defect, and cannot delegate the responsibility. In Woodward v. Boscobel (1893), 84 Wis. 226, 233, 54 N. W. 332, it is said:
“In contemplation of law the repairs were made under the supervision of the street commissioner, and the city is just as responsible for the manner in which the work was done as - it would have been had the city hired Onstine or any other person to make such repairs under the supervision and control of its street commissioner. In either case it' is the city which creates or continues the defect, no matter through whose unskilfulness or carelessness; and it must be conclusively presumed that the city knew of the defect in question and is responsible for it.”
There appears to be some inconsistency between the principle stated in the Woodward decision and the statement quoted from the Strang decision. The former would make the city liable for an injury resulting from any insufficiency in the repair of a defect which had become known to the city even though the repair was accomplished by a permittee. The Strang decision suggests, at least, that where an excavation has been made by a permittee and the city has inspected the site and remedied any apparent depression of the fill, the city is not liable for an injury resulting from further depression of that fill until after it has had notice of the situation, and an opportunity to repair.
*559 In the Strang Case, the court seems to have assumed that the repairs made before the accident were sufficient to meet the standard of duty imposed by law upon the city. At least the court did not appear to question the quality of the repairs which were sufficient to satisfy the city employee who examined the site shortly before the accident. In an effort to reconcile the two decisions, we conclude that before the city can rely upon the rule of the Strang Case, it must show the sufficiency of the repairs made to a known defect, either by proof of what was done in making the repair, or by proof of an adequate inspection.
Thus the case turns, as noted by the circuit court, upon the question whether the jury could find, under the evidence, that the inspection was not adequate.
We conclude that there was evidence to sustain the finding. The inspector did not testify, and the record disclosed only that he had made an inspection and found no fault. His supervisor testified that the inspection ordinarily made is visual and no tests are made. “The inspection includes the material that is apparent on the surface, what type of ma-' terial, whether it is filled to grade and not humped excessively, in other words, that the road is left in approximately the same condition as it was when they started.” The city does not require tamping of the fill, but does not permit the material excavated to be used for backfill. Gravel or sand and gravel backfill must be used. There was no expert testimony as to the type of inspection which would be required to determine the soundness of a fill. The road surface at the point of the accident was gravel, and the inspection was made apparently on the same day the fill was inserted.
Most people have observed freshly filled excavations, and the sinking of material with which holes have been filled. It is common knowledge that the type of material used, and the processes used for the purpose of packing the material, *560 affect the permanency of a fill. We conclude that the jurors could determine in the light of their experience that the inspection made September 13th was inadequate. The finding that the inadequacy of inspection caused the accident implied a finding that the fill was in fact insufficient and sank as a result.
By the Court. — Judgment affirmed.