Brown, Respondent, vs. Milwaukee Terminal Railway Company, Appellant.

*March 4—April 2, 1929.*
*September 9—November 5, 1929.*

For the appellant there was a brief by *Hayes, Darnieder & Hayes*, attorneys, and *W. A. Hayes*, of counsel, all of Milwaukee, and oral argument by *Francis A. Darnieder* and *W. A. Hayes*.

*Arthur H. Bartelt* of San Antonio, Texas, and *Samuel M. Soref* of Milwaukee, for the respondent.

The following opinion was filed April 2, 1929:

ESCHWEILER, J. There is no substantial dispute concerning the facts material for consideration on this appeal and further detailed statement of them is not necessary. The question presented is the narrow but troublesome one as to whether a person passing along a sidewalk on a public street in the city of Milwaukee, failing in no respect to exercise ordinary care for his own protection, injured by the blowing down of a dead tree standing between the sidewalk line and the curb of such public highway, may recover damages against an owner of the abutting premises who has had knowledge of the decayed and dangerous condition of such tree a sufficient length of time prior to the injury to have permitted of its removal.

The provision of the city charter of Milwaukee and of which we can take judicial notice (*O'Connor v. Fond du Lac*, 101 Wis. 83, 85, 76 N. W. 1116; *Durch v. Chippewa County*, 60 Wis. 227, 228, 19 N. W. 79), so far as

here material for consideration (found as sec. 1a, ch. 24), has long provided and still provides as follows:

"Whenever any injury shall happen to persons or property in the said city of Milwaukee, by·reason of any defect or incumbrance of any street, sidewalk, alley or public ground, or from any other cause for which. the said city would be liable, and such defect, incumbrance, or other cause of such injury shall arise from, or be produced by the wrong, default or negligence of any person or corporation, such person or corporation so guilty of such wrong, default or negligence, shall be primarily liable for all damages for such injury, and the said city shall not be liable therefor until after all legal remedies shall have been exhausted to collect such damages from such person or corporation."

Such provisions of the special charter of Milwaukee are the same in substance, so far as here material, with the general statutory provision, sec. 81.17, Stats., concerning the liability for highway defects in any town, city, village, or county.

The language of such .charter and statute has been before this court in a number of prior decisions, and it was early held that such provisions were not intended to indicate, and should not be construed as indicating, a legislative purpose to create any liability in and of itself or any new right of action, but merely to regulate the remedy for liabilities, if any, otherwise created or existing.

*Cooper v. Waterloo*, 88 Wis. 433, 60 N. W. 714, was an action for personal injuries caused by an alleged defective sidewalk in the defendant village, the village asserting that it was not personally liable and that the owner of the adjacent lot was primarily liable, if any one, and that such owner should be made a defendant. Plaintiff refused to amend or bring in such owner as defendant and appealed from an order striking the cause from the calendar for such failure. The court said (p. 436):

"It is to be remembered that at common law a town or village or an adjoining landowner was not liable for dam-

ages sustained by reason of a mere defective highway therein —much less by reason of a mere defective sidewalk therein. There is no liability, therefore, except such as has been created by statute."

The statute creating liability against a town, city, or village is then referred to, and it is said (p. 437) :

"This section does not undertake to create a liability against the adjoining lotowner, but merely to authorize an action against both the town, city, or village and the person whose wrong, default, or negligence caused the defect, incumbrance, or other cause of such injury."

And further on :

"However this may be, we are convinced that it gives no new right of action, but merely regulates the remedy for rights of action otherwise created."

The action was sent back for further proceedings against the village.

That case (p. 436) also cited with approval the case of *Woodward v. Boscobel,* 84 Wis. 226, 54 N. W. 332, where the village sought to evade liability for injuries on a defective sidewalk because of the provisions of its charter and ordinances placing the cost of making and repairing the sidewalks on the owner of the adjoining real estate, but it was expressly held (p. 231) that such provisions left not only the primary, but the entire, obligation upon the city to build the sidewalks and keep them in repair. It also held that such owner therefore could not be brought in on application of the defendant city as a party defendant and that such owner was "under no legal obligation to repair the sidewalk" (p. 232).

The question so presented in those two cases and also here squarely presented, namely, whether the primary duty is placed by law upon the municipality or upon the lotowners for the maintaining of the public highway in a safe condition for public travel, and held in those cases to be upon the municipality and not upon the lotowner, has been repeatedly

so ruled in such cases as *Fife v. Oshkosh,* 89 Wis. 540, 543, 62 N. W. 541; also *Sommers v. Marshfield,* 90 Wis. 59, 61, 62 N. W. 937; and *Toutloff v. Green Bay,* 91 Wis. 490, 65 N. W. 168, where the distinction is pointed out, at page 491, between a situation where the lotowner may be liable for active negligence in placing an obstruction or making an excavation in the street or sidewalk and that presented from a situation of a mere want of repair, and cites with approval (p. 492) the *Cooper Case, supra.* This latter case further reiterates the same doctrine and declares it to be the policy of our law to place upon the municipality the responsibility to keep the streets and sidewalks in safe condition for travel, and that full and certain protection is thereby assured to those injured by such neglect, and that the granting to such injured of a separate liability on the part of the property owner furnishes no additional protection and is an embarrassment rather than an advantage to him (p. 494); and again (p. 496) declares that "there is no liability on the part of the lotowner to the passer-by for injuries resulting from mere lack of repair of the adjacent sidewalk."

In *Selleck v. Tallman,* 93 Wis. 246, 67 N. W. 36, where an action for injuries on a defective sidewalk was brought against the lotowners, it was again declared that the duty of the lotowners to repair or pay for the repairs is to the corporation, not to the traveler, and the action was held not maintainable (p. 248).

The question was again fully considered in *Griswold v. Camp,* 149 Wis. 399, 135 N. W. 754, an action against a lotowner for failure to comply with the ordinance of Milwaukee requiring him to keep icy sidewalks sprinkled with ashes, etc., and the action was held properly dismissed as against the property owner (p. 403).

The same view as to the non-liability at common law of the lotowner is held in other jurisdictions, as instanced in *Hanley v. Fireproof B. Co.* 107 Neb. 544, 186 N. W.

534, 24 A. L. R. 382; *Ainey v. Rialto A. Co.* 135 Wash. 56, 236 Pac. 801, 41 A. L. R. 263.

The rule is generally stated as being that, where the duty is placed on the municipality to keep and maintain highways, then its control and power over the highway is exclusive and its responsibility cannot be evaded or shifted onto the abutters on the highway. Elliott, Roads & Streets (3d ed.) sec. 898; 41 A. L. R. 212, 217, notes; 24 A. L. R. 388, note.

The primary liability of the lotowner under the statute and charter provisions above cited and quoted, relied upon by respondent, can only arise when, by some independent active negligence on the part of the landowner, he himself creates a situation for which the municipality itself is not primarily responsible: That is the effect of the decision, relied upon by respondent, in *Papworth v. Milwaukee,* 64 Wis. 389, 25 N. W. 431, an action against the lotowner for damages to a passenger on the sidewalk because of insufficient trap or covering over a coal vault being constructed and maintained for the convenience of the lotowner; but the action there was held rightly brought against the city for its failure to keep the sidewalk in suitable repair, and that any negligence of the lotowner would not relieve the city. And in *McClure v. Sparta,* 84 Wis. 269, 54 N. W. 337, where a city permitted a lotowner to insert a hatchway for his own convenience and negligently failed to guard the opening, it was held that that would not relieve the city of its liability and that such failure by the landowner was not an independent, proximate cause (p. 273). It is further illustrated in *Smith v. Clayton C. Co.* 189 Wis. 91, 93, 206 N. W. 67, where a contractor stretched a hose across the sidewalk and was held liable to the injured traveler.

While it is true that the cases above cited from this court and the many that may be found elsewhere directly concern situations where the defect is in the sidewalk used for public

travel, yet the general rule is not confined to that narrower proposition, nor to defects upon the specific portions of the highway used for foot or vehicle travel. This is well illustrated in such cases as *Jensen v. Oconto Falls,* 186 Wis. 386, 202 N. W. 676, where a twenty-two feet long culvert pipe was placed on the side of the traveled highway; citing *Carlon v. Greenfield,* 130 Wis. 342, 110 N. W. 208, where a mortar box used in repairing culverts was left near the road; and *Berg v. Auburn,* 140 Wis. 492, 122 N. W. 1041, where twelve-foot iron pipes were left by the town authorities on the side of the road; and in *Cremer v. Portland,* 36 Wis. 92, 96, where a large stump of a tree was left in the road; all were sufficient to establish municipal liability.

The precise question here involved, namely, whether the abutting owner or the municipality is liable for damages arising from the dropping of limbs from or the fall of a tree located, as this was, within the limits of a public highway, has been passed upon in a number of cases in other states and the liability of the municipality quite generally upheld and of the abutter denied. This line of cases is well illustrated in *Zacharias v. Nesbitt,* 150 Minn. 369, 185 N. W. 295, 19 A. L. R. 1016, where the abutting owners were held not liable for the injuries from a falling tree located on a duly established county road, although there recognizing his right to appropriate the tree at any time and his ownership in the tree itself. See a long list of cases to the same effect in the note in 19 A. L. R. p. 1021. Further cases may be found in note p. 405, 39 L. R. A. N. S.; note p. 649, 20 L. R. A. N. S.; note p. 817, L. R. A. 1918 F.

For many years now the legislature has provided on an extensive scale for the planning for, the management of, and the improvement of state, county, and city parks, and has constantly broadened the scope of such provisions and expressly authorized the creation by municipalities of appropriate boards with officers and employees to carry on the

work. Among such provisions of ch. 27, Stats., may be cited sec. 27.08 (10) (a), permitting the appointment of a city forester, who may, sub. (c), under direction of the board, "plant, transplant, remove, trim, spray and otherwise care for and protect all trees and shrubs on or in that part of every street, the grade of which has been established, lying between the lot line and the curb."

There were quoted in the part of the answer stricken out below, and there are found in the record, copies of certain ordinances certified to by the city clerk. The trial court refused to permit such to be considered in the disposition of the case. Such rulings we consider erroneous. Though we cannot take judicial notice of such ordinances (*Wergin v. Voss,* 179 Wis. 603, 609, 192 N. W. 51, 26 A. L. R. 933; *O'Brien v. Fred Kroner H. Co.* 175 Wis. 238, 241, 185 N. W. 205; *Osceola v. Beyl,* 168 Wis. 386, 388, 170 N. W. 252), we shall assume, for the purpose of disposing of this question, that such quoted ordinances were in effect, rather than send the case back for them to be formally offered and received.

These ordinances make many provisions in line with the powers given by the statutes *supra.* We cite for present consideration but the following:

"Section 1282.1 (Ord. 50, July 1, 1918). No person, corporation or association shall plant, cut, prune or remove any *living* tree or shrub in a public highway in the city of Milwaukee, or cut, disturb or interfere in any way with the roots of any tree in such public highway, or spray any such trees or shrubs with any chemicals or insecticides without written permit of the board of park commissioners."

"Section 1282.2 (Ord. 50, July 1, 1918). No shade or ornamental tree or shrub shall be planted in any of the public highways of the city of Milwaukee until such tree or shrub and the place where it is to be planted shall have first been approved by the board of park commissioners of the city of Milwaukee and a permit granted by said board therefor."

"Section 1232.6 (Ord. 50, July 1, 1918). No person, corporation or association shall prevent, delay or interfere with the board of park commissioners or its employees in the planting, pruning, spraying or removing of a tree or trees or shrubs *living or dead,* in that part of any street lying between the lot line and the curb."

"Section 1277. No tree which in the opinion of the commissioner of public works may be liable to fall upon any sidewalk, street or building near to such tree shall be permitted to stand upon or near any sidewalk in this city."

Although the first above quoted refers only to *living* and not to dead trees, and sec. 1232.6, *supra,* to living or *dead* trees, we think the evident purpose of the ordinances, as a whole, is to cover and include the entire subject matter, both the quick and the dead, and that this particular tree was within the control of the city.

The plaintiff, therefore, having elected to sue the abutting landowner on a claim of a breach of duty by him resulting in damages, and it appearing as a matter of law from what is said above that it is the municipality and not the landowner upon whom the primary responsibility is placed, there is no foundation for the judgment against the defendant as entered below.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

The following opinion was filed April 8, 1929:

OWEN, J. (*dissenting*). I dissent from the conclusion reached in this case. Especially do I disapprove of the intimation contained in the opinion that the tree in question constituted an insufficiency or want of repair of the street which imposed liability for damages upon the municipality by virtue of sec. 81.15, Stats.

That the tree constituted a menace to the safety of those using the street may be conceded. But it would have con-

stituted the same menace had it been located inside the street line on defendant's lot. If so located it certainly would not constitute a defect in the street. As it constituted the same menace whether located on the boulevard or on the lot, any proper designation of its character must apply equally to either location. In my opinion it is properly classed as a nuisance. If it had been located on defendant's lot, the defendant would have been liable for the damage to plaintiff as and for maintaining a nuisance. Although the tree was located on the boulevard, defendant's ownership of the tree is not denied, nor is it disputed that under ordinary circumstances its liability resulting from its maintenance would be the same.

As I construe the opinion of the court, it is held that the ordinances of the city of Milwaukee, referred to in the opinion, place this tree under the exclusive control of the city, and absolve the lotowner from any liability for its maintenance. This in my judgment is an unwarranted construction of the ordinances quoted. The purpose of these ordinances manifestly was to enable the city to exercise some supervision and control over the æsthetic development of the streets. While they place certain limitations upon proprietary prerogatives, they by no means deny the lotowner the right of planting trees and shrubbery on the boulevard, nor do they prohibit the adjoining proprietor from suppressing a nuisance in the form of a dead tree existing on said boulevard. The ordinance simply requires an abutting lotowner to secure a permit from the board of park commissioners if he desires to plant, cut, prune, or remove any living tree or shrub, and he may plant shrubs and trees upon securing permission from the board of park commissioners. The removal of a dead tree is not prohibited.

This falls far short of withdrawing from lotowners all rights and liabilities in these respects. Zoning laws and ordinances constitute a quite similar limitation upon the right of the lotowner to do as he pleases with his own lot. To

secure a permit from the board of park commissioners for the planting of trees and shrubs in the street constitutes scarcely less a limitation upon proprietary prerogatives than ordinances requiring the lotowner to secure a permit to build a garage, repair his roof, or add a bay window to his residence. It has never been considered that this requirement has absolved a lotowner from the consequences of maintaining a nuisance upon his premises. Upon the same principle, the Majestic Realty Corporation should have been absolved from liability where defective terra cotta fell from a projection of its building, killing a pedestrian in the street, a situation under consideration in *Majestic Realty Corp. v. Brant,* decided herewith (198 Wis. 527, 224 N. W. 743). This defective terra cotta projected over the street. It constituted a menace to those using the street. It may be assumed that it could not have been repaired without first securing a permit from the building inspector.

If falling objects are to be construed as a defect in the street, why limit them to trees? If a requirement that a lotowner cannot plant trees or shrubs on the boulevard without securing a permit from municipal authorities absolves the lotowner from all liability for permitting dead trees, constituting a menace to the safety of those using the street, to remain therein, why not absolve the Majestic Realty Corporation from liability upon the same grounds?

The dead tree was a menace to the safety of pedestrians. So was the defective terra cotta. The defective terra cotta could not be repaired without a permit from the building inspector. The situation would be analogous if the dead tree could not be cut down without a permit from the municipal authorities. But it will be observed that the ordinance did not prohibit the cutting of the dead tree without a permit. In this respect the doctrine is carried further in this case than would be necessary to carry it in order to absolve the Majestic Realty Corporation. The absurdity of applying such a doctrine in the *Majestic Realty Corporation Case*

was so apparent that no one connected with that case even suggested it. But the distinction between the two cases is not one of principle. It is merely of degree. The situation · in the *Majestic Realty Corporation Case* merely emphasizes the unsoundness of the principle here applied.

I am authorized to state that Mr. Justice STEVENS concurs in these views.

On June 4, 1929, a motion for a rehearing was granted, and the cause was reargued on September 9, 1929.

The following opinion was filed November 5, 1929:

STEVENS, J. (*on reargument*). When the court rendered its former decision, the case was considered as one which presented the question whether the defendant was liable for negligence in failing to keep the street in front of its property in a safe condition for public travel. Basing its decision on the rule of the sidewalk cases, there cited, the court reached the conclusion that defendant was not guilty of any negligence that rendered it liable to the plaintiff. The cases on which the court relied in its former decision were based upon the provisions of statutes and ordinances which impose liability upon local governmental units for the failure to perform a governmental function.

A re-examination of the case satisfies the court that cases dealing with liability imposed by statute or ordinance do not aid in determining the rights of the parties in this action, because liability in this case is dependent upon the rules of the common law which impose liability for the creation or the maintenance of a nuisance.

Liability for the creation or maintenance of a nuisance "extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." 20 Ruling Case Law, p. 380. "A nuisance may exist not only by reason of doing an act, but also by omitting to per-

form a duty." Joyce, Nuisances, 2. "Negligence of the defendant is not ordinarily an essential element in an action for damages sustained by reason of a nuisance. The action is founded on the wrongful act in creating or maintaining it, and the negligence of the defendant, unless in exceptional cases, is not material." *Lamming v. Galusha,* 135 N. Y. 239, 242, 31 N. E. 1024. See, also, Joyce, Nuisances, 80.

In those cases where the nuisance is created by the defendant, no question of negligence or want of ordinary care is involved. In those cases liability for nuisance "does not rest on the degree of care used, for that presents a question of negligence, but on the degree of danger existing even with the best of care." 20 Ruling Case Law, p. 381. This rule finds illustration in the establishment of a tannery or a slaughter-house in the midst of a residential area, where the mere act of using the plant creates a nuisance. "Where the damage is the necessary consequence of defendants' acts, or is incident to the business itself or the manner in which it is conducted, the law of negligence has no application and the law of nuisance applies." Joyce, Nuisances, 28–9. The basis for liability is the damage done by or danger inherent in the creation or maintenance of that which constitutes a nuisance.

But there is a class of cases in which the acts or conduct of the defendant do not necessarily cause damage to others, in which the mere existence of danger does not create liability, unless the circumstances are such as to charge defendant with notice of the existence of the danger. The planting of shade trees in public streets, outside the limits of travel either upon the paved portion of the street or upon the sidewalk, does not ordinarily result in injury or damage to any who use the streets. Such trees, properly placed, do not constitute nuisances. But when such a tree, through decay or because of any change in the structure of the tree or in its surroundings, becomes a menace to the safety of those who travel the street, such tree may become a nuisance

which will render the owner of the adjoining lot liable for injuries which may be caused to those who lawfully use the streets. In such cases where danger results, not from the planting of the tree, but through subsequent changes for which the defendant is not responsible, it is essential to liability that it be shown either that the defendant knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff.

One who maintains a nuisance created by another is liable for injuries sustained because of the danger incident thereto just as clearly as if he had himself created the danger in the first place. "If the owner or the occupier of property continues a nuisance created thereon by others, he is liable, not because he owns or occupies the premises, but because he does not abate the nuisance." 20 Ruling Case Law, p. 392.

"There can be no doubt, under the authorities ancient and modern, that an action lies against him who erects, and against him who continues a nuisance erected by another. The continuance and every use of that which is, in its erection and use, a nuisance, is a new nuisance, for which the party injured has a remedy for his damages." *Cobb v. Smith,* 38 Wis. 21, 33. "It is well settled that every continuance of a nuisance is, in law, a new nuisance." *Ramsdale v. Foote,* 55 Wis. 557, 562, 13 N. W. 557.

The complaint alleges that the tree which fell and injured the plaintiff became "dangerous to those using such public sidewalk," and that defendant, with notice and knowledge of that fact, "permitted said tree to remain" in a condition which endangered the safety of travelers. These allegations state facts which entitle plaintiff to damages for the maintenance of a nuisance.

The jury by their verdict have found the facts essential to establish a cause of action for the maintenance of a

nuisance, that is, that the tree was dangerous to passers-by; that this condition had existed for such length of time that defendant ought to have discovered the dangerous condition and removed the tree before plaintiff sustained his injuries, and that defendant's failure to do so was the proximate cause of the injuries sustained by the plaintiff. In order to establish liability for a nuisance it must be found that the nuisance was the cause of plaintiff's injuries. The damage that may be recovered in actions based upon nuisance must always be the natural and proximate consequence of the danger created by the nuisance.

The ordinances of the city of Milwaukee regulating the planting and care of shrubs and trees in the public streets do not relieve the defendant of liability for the maintenance of a nuisance. They give the city the right to remove such a dead tree. But they in no way limit the power or affect the duty of the defendant to remove this dead tree which was clearly its property, although standing within the limits of the public street. *Andrews v. Youmans,* 78 Wis. 56, 58, 47 N. W. 304. The defendant had absolute domination over this dead tree with the power to remove it at any time. The law imposes upon the defendant the same liability for maintaining it as a nuisance that it would have imposed upon it if the tree had grown on its lot adjacent to the side-walk.

The cases cited by appellant which hold municipal corporations liable for the insufficiency or want of repair of public highways and streets resulting from defective trees do not aid in determining the rights of the parties to this action. Assuming, without deciding, that such trees may constitute defects in streets, injury caused by such a tree may impose liability on the municipality and also upon the owner of the tree who maintains such a nuisance. In such cases the person suffering injury may have a choice of remedies. In removing the menace of the dead tree the lotowner is not performing any duty imposed upon the public. He is simply

discharging the duty which the common law imposes upon him as the owner of a tree that has become a menace to the safety of those who travel the street.

The mandate of the court contained in its opinion filed April 2, 1929, is vacated, and the judgment appealed from is affirmed.

*By the Court.*—So ordered.

ESCHWEILER and CROWNHART, JJ., dissent.