KUHLMAN, Appellant, vs. VANDERCOOK and others, Respondents. [Two cases.] *

*October 15—November 10, 1942.*

---

* Motions for rehearing denied, with $25 costs, on January 12, 1943.

For the appellants there was a brief by *Sheldon & Freytag* of Elkhorn, and oral argument by *W. H. Freytag*.

*Alfred L. Godfrey* of Elkhorn, for the respondents.

WICKHEM, J.  Frances L. Kuhlman and her husband, William Kuhlman, were guests at the Bay Shore Hotel on July 27, 1938.  Defendant, Vandercook, owned the property and defendants, Yeo and Isetts, were lessees of the property during the summer season of 1938.  In the course of their business it had been necessary to hire help, one of whom was a yardman.  The Bay Shore Hotel is summer-resort property located on Williams Bay on the shore of Lake Geneva.  It has two hundred feet of lake frontage and a depth of five hundred eighty feet.  The premises are bounded by the lake shore on the east, by other premises on the south, and by municipally owned property on the north.  The boundary on the west is Walworth street, and the sidewalk along the west boundary of the premises is one hundred seven feet above the lake level.  There is consequently a downward grade east from the sidewalk to a point where the shuffleboard involved

is located. At that point the elevation is ninety-nine feet. From there to the lake the decline continues to the lake shore. Plaintiffs occupied cottage B at the time of the injury, and on the occasion in question, Mrs. Kuhlman left her cottage for the purpose of going to a bakery. She walked north from the premises across adjoining land and found the going difficult because of water and clay. She returned to the premises, walking south on Walworth street, to a point fifty feet south of the north line of the premises. At this point she could see the driveway which entered the premises at its southern limits and noticed that it was muddy and wet. She therefore cut cross-lots to reach her cottage. She walked across a few steppingstones just west of the shuffleboard and traversed the shuffleboard to avoid some standing water. She slipped on the portion of the shuffleboard where numbers had been painted, and as a result fell and sustained serious injury.

The shuffleboards, seven in number, were constructed throughout the premises. They were made of rough concrete with a cap of fine sand and cement troweled to make the sand smooth. On the north end of the shuffleboard on which the accident happened, numbers had been painted. The shuffleboard in question was located on a side hill flush with the ground below grass level, and it is conceded that it was located under trees and where leaves, grass, and bud juices naturally washed onto or were deposited upon it. It was covered with a film of such material at the time of the accident. It is conceded that the lawns and grounds were open to the free use of guests.

Upon these facts, the question is whether the owner or the lessee is *prima facie* liable to plaintiffs under the safe-place statute.

Several arguments are ably put forth by plaintiff to support her position that the defendant owners of these premises sustained liability under the facts of this case. It is asserted

that the owner of leased property used as a place of employ-
ment is liable for such structural defects as may exist in the
property, even though possession of no part of it is reserved
by the lessor-owner, and in spite of the fact that the portion
of the property claimed to be structurally defective cannot be
considered a public building, or, indeed, a building at all. We
find it unnecessary to consider these questions because we
are satisfied upon the evidence presented that plaintiff's in-
juries were not the result of structural defects in the shuffle-
board.

Plaintiff argues that the use of a fine cement for making
the boards smooth, the use of oil paint for numbers, and the
location of the boards flush with the surface of the ground
made them structurally defective. So far as the manner of
construction is concerned, it is plain that the boards had to
have painted numbers and a smooth surface. They are not
to be judged as sidewalks but as games, and to hold them
structurally defective because their surfaces are too smooth
for safe use as sidewalks would be to hold that such games
could not be constructed upon the premises, even though they
were not erected in the vicinity of paths furnished for the
convenience of guests. So far as the location of the boards
with reference to the surface of the ground is concerned, the
same comment is applicable. The shuffleboards had to be
built upon the ground, and when so built they would tend to
collect leaves, dirt, bud juices, and other products. It is
purely speculative whether the debris collected by a shuffle-
board built above the surface of the ground would be ma-
terially less than one built flush with the surface. If the
boards had been raised and a guest had stumbled, a plausible
argument would be made to the effect that the board consti-
tuted an obstruction or trap, and that it should have been
placed even with the ground. *Erbe v. Maes,* 226 Wis. 484,
277 N. W. 111. There is, of course, no claim that the loca-

tion of the board in the case constituted a trap or that plaintiff stumbled over the surface or edges of the shuffleboards. Plaintiff saw the board and deliberately walked upon it.

The evidence admits only of the conclusion that by reason of the deposits of dirt, leaves, and other debris upon the surface of the board, combined perhaps with the smooth character of the surface, a slippery condition existed and caused plaintiff to fall. The smooth surface of the boards not being a structural defect for reasons heretofore stated, the other conditions must be considered to have to do with the maintenance of the board and the premises. This eliminates liability so far as the owner is concerned, and there is no evidence that the boards were in an unsafe condition for such a length of time as to bring home to the lessee notice of their dangerous condition. *Pettric v. Gridley Dairy Co.* 202 Wis. 289, 232 N. W. 595; *Kaczmarski v. F. Rosenberg Elevator Co.* 216 Wis. 553, 257 N. W. 598. Therefore, plaintiff's case necessarily fails. Plaintiff was using as a sidewalk a structure which was not erected for that purpose and the safety of which must be judged by the purposes for which it was constructed. It was not a trap and there is no evidence that the unusual conditions of slipperiness had existed long enough to fix liability upon the lessees if, indeed, there is any liability on their part where a shuffleboard is deliberately used as a sidewalk—a proposition that at least is open to considerable doubt. What has heretofore been said excludes common-law liability for the reasons stated in *Erbe v. Maes, supra.*

*By the Court.*—Judgment affirmed.