PLESKO and another, Plaintiffs and Respondents, v. ALLIED INVESTMENT COMPANY, Defendant and Appellant: CITY OF MILWAUKEE, Defendant and Respondent.

*November 28, 1960—January 10, 1961.*

For the appellant there was a brief by *Michael J. Dunn,* and oral argument by *Mr. Dunn* and *Mr. Carl F. Schetter,* both of Milwaukee.

For the respondents Plesko there was a brief by *Donald R. Hunter* and *Kersten & McKinnon,* all of Milwaukee, and oral argument by *Mr. Arlo A. McKinnon* and *Mr. Hunter.*

For the respondent city of Milwaukee there was a brief by *John J. Fleming,* city attorney, and *John F. Kitzke,* assistant city attorney, and oral argument by *Mr. Kitzke.*

FAIRCHILD, J.    The complaint does not expressly allege that Allied Investment Company owns the "tree border" between the sidewalk and the curb where the elm tree stood. Allied appears to concede, however, that but for the effect of certain ordinances upon which it relies, it owns the fee to the center of the street subject to the city's easement for highway purposes.

The circuit court considered that the case is ruled by *Brown v. Milwaukee Terminal R. Co.* (1929), 199 Wis. 575, 224 N. W. 748, 227 N. W. 385.  In that case, the plaintiff, who was using the sidewalk, was injured by the fall of

a dead and decayed tree which stood in the tree border between the sidewalk and the curb. The defendant abutting owner alleged the existence of city ordinances investing the city with full control of the tree. Upon reargument, it was ultimately held that, "The complaint alleges that the tree which fell and injured the plaintiff became 'dangerous to those using such public sidewalk,' and that defendant, with notice and knowledge of that fact, 'permitted said tree to remain' in a condition which endangered the safety of travelers. These allegations state facts which entitle plaintiff to damages for the maintenance of a nuisance." (p. 590.)

The ordinances considered by the court in that case (p. 584) prohibited the planting, pruning, spraying, or removal of a living tree in a public highway without a permit; prohibited interference with park employees in planting, pruning, spraying, or removing trees in the tree border; and required removal of a tree on or near a sidewalk if, in the opinion of the commissioner of public works, it might fall upon any sidewalk, street, or building.

With respect to these ordinances, the court said at page 591:

"The ordinances of the city of Milwaukee regulating the planting and care of shrubs and trees in the public streets do not relieve the defendant of liability for the maintenance of a nuisance. They give the city the right to remove such a dead tree. But they in no way limit the power or affect the duty of the defendant to remove this dead tree which was clearly its property, although standing within the limits of the public street. *Andrews v. Youmans*, 78 Wis. 56, 58, 47 N. W. 304. The defendant had absolute domination over this dead tree with the power to remove it at any time. The law imposes upon the defendant the same liability for maintaining it as a nuisance that it would have imposed upon it if the tree had grown on its lot adjacent to the sidewalk."

Allied points to ordinances somewhat different from those considered in the *Brown* decision. They are:

Ordinance 78 adopted May 27, 1878:

"The width of the sidewalks on each side of Cass street, from Division to Ogden street in the first ward of the city of Milwaukee is hereby determined and permanently established at twenty-two and one-half feet."

Charter Ordinance 40 adopted March 9, 1931, authorized appointment of a city forester who might plant, remove, and care for all trees and shrubs in tree borders and in center and side plots of boulevards and parkways; provided for notice to the lot owner of any proposal to plant or remove any living shade tree, and for hearing thereon, after which the city forester, subject to the direction of the board of park commissioners, would abandon or proceed with the work as he believed the best interests of the public required;

Charter Ordinance 42 adopted April 20, 1931, provided that the cost of planting, renewing, and removing trees and shrubs in the tree border should be chargeable and assessed to the abutting lot, and that after January 1, 1932, the cost of trimming, spraying, caring for, and maintaining trees and shrubs should not be so assessed, but charged to city funds;

Charter Ordinance 89 adopted February 1, 1937, transferred the duties of the city forester to the department of public works;

Charter Ordinance 98 adopted March 14, 1938, authorized the commissioner of public works to plant, transplant, remove, and care for all trees and shrubs in tree borders, or in center and side plots according to his belief as to the best interests of the public, and provided that the cost of planting, renewing, removing, and maintaining trees or shrubs shall not be chargeable to, or assessed upon the abutting lot unless otherwise ordered by the common council.

Sec. 4–1 of the city ordinances prohibits planting, pruning, or removal of any living tree or shrub in a public highway

without written permit of the commissioner. Sec. 4–2 provides that no shade or ornamental tree or shrub shall be planted in any public highway until such planting has been approved by the commissioner, and a permit granted. Sec. 4–3 provides, among other things, that all trees "liable" to fall on a sidewalk or street shall be deemed a public nuisance. Sec. 4–15 provides that the commissioner shall notify the owner to remove or otherwise care for trees which are a public nuisance "which are not maintained by the city as provided by law." Sec. 4–18 forbids interference with city employees in planting, maintaining, or removing trees in tree borders or center or side plots of boulevards.

Allied argues that by virtue of the ordinances referred to, the city has absolute control over the trees in the tree border, and that therefore the abutting owner has no responsibility to remove a tree which has become a hazard even if its dangerous condition was known or, in the exercise of ordinary care, should have been known to the abutting owner.

In the *Brown Case,* this court considered the ordinances to be regulatory and not to exclude the owner from dominion over the tree border. Some of the present ordinances merely regulate planting, maintenance, and removal of trees and shrubs by the abutting owner. Others provide for similar activity by the city, at public expense, apparently after the owner has been given notice and an opportunity to be heard. Neither the city nor the owner may arbitrarily veto the plans of the other. The interests of both in the area of the tree border are recognized, and neither is excluded. We reach a question of desirable policy: On whom should responsibility primarily rest where there has been injury because neither has acted to remove a menace?

Ownership or some other type of property interest in shade and ornamental trees along the sidewalk in front of one's property is widely recognized. It has been explained

upon the theory that the abutting owner has title to the center of the street, subject to the public easement, or simply as "sanctioned by the custom of the country." [1] We conclude that unless an abutting owner be excluded by law or ordinance from removing a dangerous tree from the area between the sidewalk and the curb, the *Brown* decision should continue to apply.

Allied cites several cases which we do not find to be applicable to the present case.

In *Lindemeyer v. Milwaukee* (1942), 241 Wis. 637, 6 N. W. (2d) 653, an abutting owner was held not liable for injuries resulting from a projecting water stop box located in the public sidewalk. An ordinance prohibited any person from molesting this installation.

In *Krejci v. Lojeski* (1957), 275 Wis. 20, 80 N. W. (2d) 794, plaintiff fell after stumbling upon a water-shutoff valve protruding out of the sidewalk. It was held that under the circumstances, the projection was not sufficiently dangerous to be a nuisance. The liability of an abutting owner for maintenance of a nuisance in a public way was assumed.

In *Miller v. Welworth Theatres* (1956), 272 Wis. 355, 75 N. W. (2d) 286, injury was allegedly caused by a crack in the public sidewalk in front of the ticket window and entrance of defendant's theater. Plaintiff was hurt after purchasing a ticket and while moving to enter the theater. It was held that because the care and maintenance of the sidewalk rested upon the municipality, the area where plaintiff was hurt was not a place of employment, and defendant did not have the duties imposed by the safe-place statute with respect to the area.

These decisions, all relating to injuries produced by the condition of the traveled portion of the sidewalk, do not

---

[1] See 10 McQuillin, Mun. Corp. (3d ed.), pp. 679–682, sec. 30.66.

determine the responsibility of abutting owners with respect to trees and other objects maintained in the tree border.

We have not considered the plaintiffs' request for review of the portions of the order sustaining Allied's demurrers to other causes of action. Plaintiffs' remedy as to the portions of the order from which Allied did not appeal was to appeal under sec. 274.12 (4), Stats., and their request for a review was insufficient. We have recently decided that where a respondent requests review of a portion of an appealable order not appealed from, appellant does not object, and both fully argue the questions raised, sec. 274.11 (4) authorizes the review. *Asen v. Jos. Schlitz Brewing Co.* (1960), 11 Wis. (2d) 594, 106 N. W. (2d) 269. Here, however, although Allied did not object to the request for review, its brief contained no discussion of the questions which respondents seek to raise, and little, if any, of the oral argument was devoted to them. Under these circumstances, we do not deem that the portions of the order not appealed from are before us. We therefore give no consideration to whether the circuit court was correct in sustaining the demurrers.

*By the Court.*—The portion of the order appealed from is affirmed.