SCHWENN and wife, Respondents, v. LORAINE HOTEL
COMPANY and another, Appellants.

*October 5—October 31, 1961.*

602

For the appellant Loraine Hotel Company there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner.*

For the appellant Yellow Cab & Transfer Company there was a brief by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *James C. Herrick,* all of Madison.

For the respondents there was a brief by *Lawton & Cates* of Madison, and oral argument by *Richard L. Cates.*

MARTIN, C. J.  The first question raised on appeal is whether the safe-place statute applies, specifically, whether

the driveway in question constituted a "place of employment" as to the hotel and the cab company under sec. 101.01 (1), Stats., which it was their duty to maintain in a safe condition under sec. 101.06.

This is a semicircular driveway lying between the sidewalk in front of the hotel and the south curb line of West Washington avenue. There is a concrete island between West Washington and the middle part of the drive which is 47 feet long at the curb of the street and 68 feet along the curve of the drive. The length of the drive along the curve of the sidewalk is 210 feet and it is approximately 20 feet wide directly in front of the hotel. There are openings to the street, about 43 feet wide, at the east and west ends of the drive.

It was stipulated by counsel that the land on which the driveway is built is owned by the city of Madison, being dedicated to it for street purposes. The evidence shows, however, that it was not used for general public vehicular or pedestrian travel, but almost exclusively for the loading and unloading of guests and luggage from taxis and private autos. There was evidence that the city had never removed snow from the driveway; that the city had no signs posted in and along the driveway; that the city police never ticketed cars parked in that area.

A full-time doorman was employed by the hotel to assist arriving and departing guests at vehicles in the driveway. The doorman was so assisting a guest of the hotel when the accident happened. The hotel kept two private "no parking" signs on the drive. It also owned and maintained a "no parking, taxi stand" sign. One of the doorman's duties was to keep unauthorized vehicles out of the driveway. Officers of the hotel sometimes parked there. The doorman and other hotel employees occasionally cleaned the driveway of snow and the hotel permitted other private parties to plow it.

For over thirty years the only cabs which parked at the cabstands were Yellow cabs, and driver employees of the cab company had orders to keep the stand occupied at all times, day and night. The cab company also had a direct telephone to its office in the lobby of the hotel. The evidence shows that the cab company had sometimes in the past plowed out the drive and that on occasion the taxi drivers would shovel and sand the driveway. There was no formal agreement between the hotel and Yellow Cab as to the use of the driveway or the taxi stands. Hertz Rent-A-Car also had a direct-line telephone inside the front door of the hotel. The Checker Cab Company, which operated an airline limousine service, maintained a service desk in the hotel lobby. Taxis owned by cab companies other than the Yellow Cab, although they delivered guests to the hotel, neither parked at the taxi stand nor solicited business from that area. The Checker airline limousine picked up and discharged passengers not at the driveway but at the West Washington curb of the island in the center of the driveway.

Sec. 101.01 (1), Stats., defines a "place of employment" as:

". . . every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, . . ."

As recognized in *Ball v. Madison* (1957), 1 Wis. (2d) 62, 82 N. W. (2d) 894, the statute is very broad—a place of employment can be almost any place. As outlined above, the evidence in this case clearly indicates that both defendants conducted some business operations in the drive-

way and both employed personnel to work there. Both had employees actually engaged in work there at the time the plaintiff fell.

Under sec. 101.01 (3), Stats., an employer is a person or entity having control or custody of a place of employment.

Control by the hotel is shown by the evidence that it maintained a doorman whose work included keeping the driveway free of unauthorized vehicles. He had done this many times. The only parking permitted by the hotel was by the Yellow cabs, by hotel guests who had temporary permission from the hotel, and by officers of the hotel. There is evidence that the doorman and other employees of the hotel cleaned the driveway in winter. Private agencies plowed it with the express or tacit approval of the hotel.

Yellow cabs had the exclusive use of the taxi stand in the driveway. The cab company kept cabs there at all times and had, just inside the hotel door, a direct-wire telephone to its dispatcher. The evidence showed that employees of the cab company sometimes shoveled and sanded the driveway and that the company on some occasions used its own snowplow to clean the drive.

On the other hand, the city exercised no control over the driveway which interfered with the control exercised by the defendants. It maintained no parking or cabstand signs in the area; it did not control parking there; it never plowed snow from the driveway. Testimony by the hotel manager that he saw city plows in the driveway on infrequent occasions carried little weight in view of the testimony of the doorman and many cab drivers that they never saw a city plow there, and the testimony of the assistant commissioner of streets that city employees were instructed not to plow driveways unless they constituted access to property which the city operated.

Cases cited by defendants to the effect that city streets and sidewalks are not places of employment are distinguish-

able on the ground that the premises in each case did not meet the statutory requisites of a place of employment in that they were used by the general public, precluding any control on the part of the employer. It is undisputed that general vehicular traffic never used the driveway here in question, but traveled on West Washington avenue. The hotel manager himself testified that those who made use of the drive were, "Everyone who enters or leaves the hotel via cab, car, or limousine."

The safe-place statute does not, by its terms, require an employer to own the premises in order to maintain a place of employment. Nor do cases on the subject require ownership as a requisite of liability. *Werner v. Gimbel Brothers* (1959), 8 Wis. (2d) 491, 99 N. W. (2d) 708, 100 N. W. (2d) 920. Thus, control and custody of the premises need not be exclusive, nor is it necessary to have control for all purposes. *Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 290 N. W. 177.

Upon the record in this case the two defendants exercised control over this driveway for the purposes of snow removal.

In *Cross v. Leuenberger* (1954), 267 Wis. 232, 235, 65 N. W. (2d) 35, 66 N. W. (2d) 168, this court, quoting from *Jaeger v. Evangelical Lutheran Holy Ghost Congregation* (1935), 219 Wis. 209, 212, 262 N. W. 585, said:

"'The permitting of temporary conditions wholly disassociated from the structure does not constitute a violation of the safe-place statute by the owner of a [public] building, although it may, and *undoubtedly does, constitute a violation if permitted by an employer.*' [Emphasis supplied.]"

Under the statute an employer has the duty to furnish and maintain a place of employment safe for both employees and frequenters and is required to "furnish and use safety devices and safeguards, and . . . adopt and use methods

and processes reasonably adequate to render such . . . places of employment safe, and . . . do every other thing reasonably necessary to protect the life, health, safety, and welfare of such . . . frequenters." Sec. 101.06, Stats.

That a place of employment be "safe" means that it be as safe as the nature of the employment and the place of employment will reasonably permit. What is a safe place of employment depends on the facts and circumstances of each case. *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 94 N. W. (2d) 187.

It is argued that the driveway in this case was not designed for pedestrian traffic. In *Kuhlman v. Vandercook* (1942), 241 Wis. 418, 422, 6 N. W. (2d) 235, this court held:

"Plaintiff was using as a sidewalk a structure [shuffle-board] which was not erected for that purpose and the safety of which must be judged by the purposes for which it was constructed."

It has also been held, however, that the statute imposes a duty upon an employer to anticipate what the premises will be used for and to inspect them to make sure they are safe for such uses. *Wisconsin Bridge & Iron Co. v. Industrial Comm.* (1959), 8 Wis. (2d) 612, 99 N. W. (2d) 817.

That the driveway would be used for pedestrian traffic by employees and frequenters was not just a remote possibility. The doorman testified that he, as well as Yellow cabs, loaded and unloaded vehicles on all parts of the driveway; that at the time plaintiff fell he was assisting the driver of a private automobile out of the driver's side. He also testified that guests of the hotel using the airport limousine usually made use of the island which required them to walk across the driveway.

We have held in many cases that accumulations of ice and snow may constitute a violation of the safe-place stat-

ute on the part of an employer. See *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 74 N. W. (2d) 137; *Walley v. Patake* (1956), 271 Wis. 530, 74 N. W. (2d) 130; *Paepcke v. Sears, Roebuck & Co.* (1953), 263 Wis. 290, 57 N. W. (2d) 352; *Krause v. Menzner Lumber & Supply Co.* (1959), 6 Wis. (2d) 615, 95 N. W. (2d) 374; *Werner v. Gimbel Brothers, supra;* and *Trobaugh v. Milwaukee* (1953), 265 Wis. 475, 61 N. W. (2d) 866. In the last case the court held that ridges from three to five inches high could be found by the jury to constitute an actionable defect. The evidence here indicates that the ruts were from three to four inches high.

There is credible evidence to indicate that the defendants had the requisite notice of the defect on the surface of the driveway. Either actual or constructive notice, within a reasonable time before the accident, is required under the statute. See *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. (2d) 71, 85 N. W. (2d) 772; *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 101 N. W. (2d) 645; *Werner v. Gimbel Brothers, supra.*

Defendants argue that the plaintiff's negligence exceeded any possible negligence on their part as a matter of law. The apportionment was for the jury. The facts regarding plaintiff's jaywalking, her failure to see the ruts, and her failure to wear boots, were for the jury to consider, in view of the weather conditions and other circumstances which would affect her negligence, in comparing it with that of the defendants.

We must agree with the defendants, however, that the trial court erred in combining their negligence for purposes of the jury's comparison with that of the plaintiff. Under sec. 331.045, Stats., which modified the common-law rule barring recovery by one who is contributorily negligent, the comparison of negligence in a multiple-defendant case is required to be between the plaintiff and the in-

dividual defendants. See *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N. W. 721. Otherwise, it would be possible for a plaintiff to recover from a defendant less negligent than himself. We cannot believe that the legislature intended such a result.

It was the trial court's view that *Reber v. Hanson* (1952), 260 Wis. 632, 638, 51 N. W. (2d) 505, governed. In that case the parents of a boy killed by a truck sued under the wrongful-death statute. The jury found the parents, as a unit, 75 per cent contributorily negligent. The form of the comparative-negligence question was sustained on appeal on the ground that—

". . . the duty to protect was joint, the opportunity to protect was equal, and as a matter of law neither the obligation nor the breach of it was divisible."

The basis for the court's holding in that case is not present here. Even if the duty of the defendants to maintain the driveway safe were considered equal, the opportunity to so maintain it may or may not have been equal. The hotel had someone on duty at the driveway at all times, while the cab company employees might be there only sporadically, especially if the taxi business was good. This is a matter for the jury.

Defendants call attention to the trial court's frequent reference in its instructions to "accumulation of rutted snow and ice." This complaint is justified. It has been held error for the trial court to emphasize the evidence of one party in its instructions. *Coman v. Wunderlich* (1904), 122 Wis. 138, 99 N. W. 612; *Mahoney v. Kennedy* (1925), 188 Wis. 30, 205 N. W. 407. Also, when instructing the jury, the trial court should avoid stating facts and conclusions which are in dispute in an affirmative manner. Such practice could amount to an unwarranted invasion of the province of the jury. See *Cohen v. Bridges* (1949), 255 Wis. 535, 39 N. W. (2d) 373.

On the new trial, the court will avoid such references. Since no questions are raised with respect to the damages assessed by the jury, the issues on the new trial will not include damages.

*By the Court.*—Judgment reversed, and cause remanded for a new trial on all issues except damages.