PEPPAS, Executrix, Plaintiff and Respondent, v. CITY OF
MILWAUKEE, Defendant and Respondent: GARDNER
M-E-L COMPANY and another, Defendants and Appellants.*

*January 4—February 1, 1966.*

* Motion for rehearing denied, without costs, on April 12, 1966.

612

For the appellants there were briefs by *Whyte, Hirsch-boeck, Minahan, Harding & Harland* and *Reginald W. Nelson,* all of Milwaukee, for the Gardner M-E-L Company, and *Arthur T. Spence* of Milwaukee, for Har-Van, Inc., and oral argument by *Mr. Nelson* and *Mr. Spence.*

For the plaintiff-respondent there was a brief by *Kersten & McKinnon,* attorneys, and *E. Campion Kersten* of counsel, all of Milwaukee, and oral argument by *E. Campion Kersten.*

For the defendant-respondent there was a brief by *John J. Fleming,* city attorney, and *George A. Bowman, Jr.,* assistant city attorney, and oral argument by *Mr. Bowman.*

WILKIE, J.   Two issues are presented on this appeal:

First, is the driveway a place of employment within the meaning of the safe-place statute?

Second, are the owner and the lessee of property abutting a driveway which lies within the boundary of the dedicated public street liable in nuisance for a defect existing in that driveway?

A preliminary question is raised by respondent Peppas, who, relying on *Wells v. Dairyland Mut. Ins. Co.*,[2] challenges the right of either appellant to relief on this appeal since, as respondent contends, neither moved for a new trial below.   However, Gardner, in its motions after verdict, raised the necessary questions of law involved in the resolution of these two issues as to Gardner and specifically included an alternative request for a new trial.   Har-Van similarly raised these same questions of law as applied to it, but did not include a request for a new trial.   The purpose of the rule of *Wells* is to provide an opportunity to the trial court to correct errors before any party has a right to raise the same errors on appeal.   This purpose is fully satisfied in the instant case since both appellants raise the same legal questions on appeal that were raised in the trial court by their motions after verdict.   Since, as will be developed later in this opinion, the case is disposed of entirely on questions of law that were raised below, and persisted in here, there is no need to consider whether or not the appellants have preserved their right to ask for a new trial.

### Place of Employment.

The trial court considered that, as a matter of law, the driveway was a place of employment within the mean-

---

[2] (1957), 274 Wis. 505, 80 N. W. (2d) 380.

ing of sec. 101.01 (1), Stats.,[3] the safe-place statute. Both appellants attack this determination.

On this issue the case at bar is controlled by *Hansen v. Schmidman Properties*[4] a case with facts remarkably similar to those in the present action. In *Hansen* an alley led from the street to a parking lot behind defendants' tavern. The lot was utilized by defendants' patrons. The plaintiff slipped on ice on the sloped portion of the alley lying between the sidewalk and the street. The fall occurred on land which had been dedicated to the public for street purposes. The court referred to the earlier case of *Miller v. Welworth Theatres*[5] in which the plaintiff fell after catching her heel in a crack in the public sidewalk in front of defendant's ticket window. In *Miller*, in rejecting the claim that the defendant was liable for a safe-place violation, this court said:

"The public sidewalk described cannot be translated into an employer's place of employment, because the responsibility of maintaining the sidewalk is not that of defendant; the care and maintenance clearly rests upon the municipality. Sec. 62.17, Stats. It must be recognized that in a state where there is no obligation on the abutting landowner to keep the sidewalk in front of his premises in repair or in a safe condition for public travel, in the absence of a statute or ordinance imposing such duty upon him a defect in the sidewalk not caused by him cannot be charged against him."[6]

In *Hansen* this court said that the above-quoted language from *Miller* "applies here even more clearly when the alleged defect is in the part of the street constructed

---

[3] "101.01 DEFINITIONS OF TERMS USED. . . . (1) The phrase 'place of employment' includes every place . . . and the premises appurtenant thereto where either temporarily or permanently any . . . business is carried on, or where any . . . operation, directly or indirectly related to any . . . business, is carried on, and where any person is . . . employed . . . ."

[4] (1962), 16 Wis. (2d) 639, 115 N. W. (2d) 495.

[5] (1956), 272 Wis. 355, 75 N. W. (2d) 286.

[6] Id. at page 359.

for use by vehicles and not by pedestrians," [7] and held that the driveway apron was not a place of employment. *Miller* and *Hansen* were both cited with approval in *Corpron v. Safer Foods, Inc.*[8] where the plaintiffs slipped on an icy sidewalk abutting defendants' store.

Respondent Peppas seeks to distinguish *Hansen* and *Corpron* (but not *Miller*) on two grounds. First, that these cases are inapplicable because the dangerous condition there involved was temporary in nature—*i.e.*, ice—while the flaw here was permanent. This analysis, which ignores the fact that the sidewalk crack in *Miller* was permanent, goes to the nuisance issue. Whether or not a particular location constitutes a place of employment does not depend on the type of defect present but rather turns on the use made of the area. Second, that *Hansen* differs in that the use of the driveway was merely incidental to the tavern business while the apron in the instant case was an integral part of Gardner's business. However, not only is the limited importance of the driveway in the present case demonstrated by the fact that it was used only 25 percent of the time, but it was hardly crucial to the conduct of business since cars could be, and were, moved by means of the alley to the west of the lot. On the other hand, the lot in *Hansen* was intended for the exclusive use of the customers.

Respondent Peppas also maintains that this case is governed by *Schwenn v. Loraine Hotel Co.*[9] In *Schwenn* the plaintiff tripped on rutted snow and ice which had accumulated in a semicircular driveway lying in front of a hotel. The driveway, although located on city property, was not used for general public vehicular or pedestrian traffic, but rather was employed almost exclusively for the purpose of loading and unloading guests and luggage from taxis and private automobiles. The city

[7] *Supra*, footnote 4, at page 642.

[8] (1964), 22 Wis. (2d) 478, 126 N. W. (2d) 14.

[9] (1961), 14 Wis. (2d) 601, 111 N. W. (2d) 495.

did not post signs in, plow, or police the area. The hotel had a doorman present to assist guests in and out of vehicles using the driveway, and also to keep unauthorized vehicles away. A particular taxi company had two stands on the drive, and for thirty years had instructed drivers to keep the stands occupied. In the hotel lobby there was a direct telephone to the cab office. The hotel maintained two "no parking" and one "no parking, taxi stand" signs on the drive and shared snow removal operations with the cab company. It was held that under the circumstances, the driveway amounted to a place of employment for both the hotel and the taxi company.

In *Hansen* the court recognized that the facts in *Schwenn* were "peculiar" and distinguished the case largely on the ground that the element of "complete and exclusive dominion over the area" [10] was lacking. *Corpron* also differentiated *Schwenn* on this basis and for the additional reason that there were no employees regularly on duty on the sidewalk. The present case likewise differs from *Schwenn* in several key respects. First, as was the situation in *Hansen* and *Corpron,* neither appellant exercised exclusive control over the driveway. There were no signs prohibiting use of the apron and anyone had a right to use it. Motorists often turned around in it and Peppas had in fact driven his car over the ramp into the lot shortly before he fell. Second, Gardner's employees were not stationed as such on the apron, a factor relied on in *Corpron.* Third, unlike *Schwenn,* where the drive played an integral part in both the hotel and cab company operations by providing a spot to pick up and discharge guests and baggage, the driveway here was at best an incidental part of Gardner's business which afforded alternate access to the parking lot. Fourth, there was no installation comparable to the

---

[10] *Hansen v. Schmidman Properties, supra,* footnote 4, at page 642.

telephone setup in *Schwenn* which mechanically tied up the driveway with the business.

Respondent city of Milwaukee contends that appellant Har-Van is liable under the safe-place statute since it actually holds legal title to the center of Van Buren street. An identical contention was rejected in *Hansen v. Schmidman Properties,*[11] where the evidence established, as does the stipulation here, that the driveway lay within the land dedicated to the city for street purposes.

We conclude that the spot where Peppas fell was not a place of employment as to either Gardner or Har-Van, and that no liability could flow to either appellant on the grounds of any violation of that statute.

### *Nuisance.*

The jury found appellants Har-Van and Gardner to be liable on a nuisance theory because each knew of the dangerous condition of the driveway. The general rule in Wisconsin is that abutting landowners (or lessees) are liable for only such defects or dangerous conditions in a public way as are created by active negligence on their part.[12] It is undisputed that the depression in the driveway was caused solely by natural deterioration of the concrete and that appellants did not contribute to the condition in any manner.

[11] *Supra,* footnote 4.

[12] *Steeno v. Wolff* (1961), 14 Wis. (2d) 68, 74, 109 N. W. (2d) 452; *Kunz v. Wauwatosa* (1959), 6 Wis. (2d) 652, 656, 95 N. W. (2d) 760; *First Nat. Bank & Trust Co. v. S. C. Johnson & Sons* (1953), 264 Wis. 404, 409, 59 N. W. (2d) 445; *Holl v. Merrill* (1947), 251 Wis. 203, 207, 28 N. W. (2d) 363. See also sec. 81.17, Stats., which imposes liability for "any defect in any highway" on the municipality but renders any other person liable only when the damages are caused by "the wrong, default or negligence" of that party.

Relying on *Brown v. Milwaukee Terminal R. Co.*[13] and *Plesko v. Allied Investment Co.*[14] respondents contend that appellants are liable in nuisance for knowingly permitting the driveway to remain in a dangerous condition. In both of these cases, decayed trees standing between the curb and sidewalk within the limits of the public street easement toppled on passing plaintiffs. However, *Brown* and *Plesko,* which imposed liability on the property owner because of falling limbs, were expressly distinguished in *Hei v. Durand*[15] which involved a sidewalk defect "for the reason that in such cases the question of keeping a street or highway in repair is not involved, and the matter is wholly within the control of the property owner."[16] This differentiation was also mentioned in *Plesko* itself, where the court dismissed several cases cited by the property owner on the ground that:

"These decisions, all relating to injuries produced by the condition of the traveled portion of the sidewalk, do not determine the responsibility of abutting owners with respect to trees and other objects maintained in the tree border."[17]

Furthermore, the original *Brown* result was explained as being unsound in that it was grounded on "sidewalk cases" which in turn were based "upon the provisions of statutes and ordinances which impose liability upon local governmental units for the failure to perform a governmental function."[18] The rehearing predicated liability on common-law-nuisance theories rather than on the

[13] (1929), 199 Wis. 575, 224 N. W. 748, 227 N. W. 385.

[14] (1961), 12 Wis. (2d) 168, 107 N. W. (2d) 201.

[15] (1963), 22 Wis. (2d) 101, 125 N. W. (2d) 341.

[16] *Hei v. Durand, supra,* footnote 15, at page 104.

[17] *Plesko v. Allied Investment Co., supra,* footnote 14, at page 174.

[18] *Brown v. Milwaukee Terminal R. Co., supra,* footnote 13, at page 588.

municipal-function concept. Thus it can be seen that *Brown* and *Plesko* are not controlling in the present case.

In any event, the defect was not actionable since the driveway was not intended for pedestrian use. In *Kuhlman v. Vandercook,*[19] where the plaintiff slipped while walking on a shuffleboard layout, the court said:

> "Plaintiff was using as a sidewalk a structure which was not erected for that purpose and the safety of which must be judged by the purposes for which it was constructed. It was not a trap and there is no evidence that the unusual conditions of slipperiness had existed long enough to fix liability upon the lessees if, indeed, *there is any liability on their part where a shuffleboard is deliberately used as a sidewalk—a proposition that at least is open to considerable doubt.*" (Emphasis added.)

This language was relied on by the court in *Hansen v. Schmidman Properties,* where the court dismissed the plaintiff's contention that the driveway was not safe for pedestrians by saying "it was not constructed for the use of pedestrians nor did it appear to be placed there for the accommodation of pedestrians."[20]

Since, as a matter of law, neither appellant is liable to the plaintiff on the ground of either a violation of the safe-place statute or nuisance, and since the findings of negligence on the part of the city of Milwaukee as to the condition of the driveway and as to permitting a nuisance to continue stand unchallenged, the judgment for the plaintiff respondent should stand against the city of Milwaukee alone.

*By the Court.*—Judgment reversed as to both appellants; appellants' costs on this appeal to be taxed one half to respondent Peppas and one half to respondent city of Milwaukee; cause remanded for further proceedings consistent with this opinion.

---

[19] (1942), 241 Wis. 418, 422, 6 N. W. (2d) 235.

[20] *Hansen v. Schmidman Properties, supra,* footnote 4, at page 643.

The following memorandum was filed April 12, 1966.

PER CURIAM (*on motion for rehearing*). In our original opinion, in referring to *Hansen v. Schmidman Properties* (1962), 16 Wis. (2d) 639, 115 N. W. (2d) 495, we erroneously used the word "alley" in describing the place where the plaintiff fell. The correct expression should have been "driveway apron," and we now correct such mistake. In no way does the use of the erroneous term affect the merits of the matter upon which rehearing is now sought.

The motion for rehearing is denied, without costs.